Curtis G. STRIEGEL and Maurine T. Striegel, Plaintiffs and Appellees,

v.

DAKOTA HILLS, INC.; Moore Engineering Company, Moore Engineering, Inc.; Donald Gartner and Kathy Gartner; First National Bank and Trust Co.; Dakota Northwestern Bank National Association; Kenneth O. Leonard; R.L. Kilzer, P.C. Pension & Profit Sharing Plan; and Ralph L. Kilzer, individually, Defendants,

and

Hillside Trust; Lovelle Biby, Trustee of the Hillside Trust; and Gerald D. Biby, Defendants and Appellants.

Civ. No. 10699.

Supreme Court of North Dakota.

March 20, 1985.

Tschider & Smith, Bismarck, for plaintiffs and appellees; argued by Sean O. Smith, Bismarck.

John O. Holm, Dickinson, for defendant Dakota Hills, Inc.

Thomas M. Disselhorst, Bismarck, for defendants and appellants.

PEDERSON, Surrogate Justice.

This is an appeal from a "Final Judgment Nunc Pro Tunc" which canceled a contract for deed and foreclosed a security agreement. We affirm.

In January 1979, Curtis and Maurine Striegel executed a contract for deed to sell campground property to Gerald Biby. Biby subsequently conveyed his interest in the property by quit claim deed to Hillside Trust [Hillside], notwithstanding a provision in the contract for deed that Biby's interest was not assignable without the written consent of the Striegels.

In March 1982, the Striegels brought a foreclosure action against Biby seeking cancellation of the contract for deed. The Striegels invoked the acceleration clause in the contract for deed and claimed that Biby had failed to make the requisite monthly payments of principal and interest and had refused to pay delinquent 1981 real estate taxes. In his answer, Biby raised numerous affirmative defenses and counterclaims. Biby asserted that he was not a proper party to the foreclosure action because he had assigned his interest to Hillside, which was not named as a party defendant. He also claimed, among other things, fraud and material misrepresentations on the part of the Striegels.

A partial summary judgment in the Striegels' favor was entered by the district court on June 14, 1982, canceling the contract for deed and establishing a redemption period for Biby of 100 days from the date of entry of judgment. The partial judgment also ordered that the Striegels amend their complaint to include Hillside as a defendant, and Hillside and its trustee were served on June 14, 1982. The district court, concluding that Biby's affirmative defenses were more appropriately described as counterclaims, declined to rule on them because questions of fact existed.

On June 16, 1982, Biby and Hillside filed for joint relief under Chapter 11 of the United States Bankruptcy Code. The bankruptcy court did not permit the joint filing, but allowed Biby's petition to proceed. Hillside subsequently filed separately for relief, but the Striegels successfully obtained dismissal of its bankruptcy petition.

Hillside, through Biby's counsel, filed an answer and counterclaim to the foreclosure action in state court. The answer admitted that under the terms of the quit claim deed, Hillside "obtained all right, title, interest, claim or demand in and to the tract of land that is the subject of this lawsuit." The answer also incorporated by reference Biby's answer and counterclaim of April 1982.

A partial summary judgment in the Striegels' favor was entered on July 5, 1983, foreclosing Hillside's interest in the real and personal property and establishing a redemption period for it of 30 days from the date of entry of judgment. This partial judgment, similar to the partial judgment entered on June 14, 1982, foreclosing Biby's interest, authorized the issuance of a "Writ of Special Execution." The Striegels took possession of the personal property on July 14, 1983.

On July 15, 1983, Hillside filed another petition in bankruptcy court. The Striegels were once again successful in having the petition dismissed and they took possession of the real property. Biby and Hillside appealed to this court, and in *Striegel v.*

*Dakota Hills, Inc.*, 343 N.W.2d 785 (N.D. 1984), we dismissed the appeal because the partial judgment was interlocutory and nonappealable without a Rule 54(b), NDRCivP, determination.

The Striegels then requested the district court to enter a Rule 54(b) certification and to dismiss the counterclaims. The district court denied the Striegels' motion for dismissal of the counterclaims, but granted the 54(b) certification and entered a judgment nunc pro tunc which provided that the two partial judgments previously entered were final judgments as to the Striegels' claims. Biby and Hillside have appealed.

## AUTOMATIC STAY

Biby claims that the district court erred in ignoring the automatic stay provisions of 11 U.S.C. § 362(a) which have been in effect since he filed his bankruptcy petition on June 16, 1982.

The automatic stay provisions of the Bankruptcy Code prohibit the commencement or continuation of judicial, administrative or other proceedings against the debtor that were or could have been commenced before the bankruptcy petition was filed. *See Kessel v. Peterson*, 350 N.W.2d 603 (N.D.1984). Although 11 U.S.C. § 362(a) provides for an automatic stay of all proceedings or acts against the debtor, the debtor's property or property of the estate, it does not stay acts against property which is neither the debtor's nor the estate's. *In re Sparkman*, 9 B.R. 359 (Bkrtcy.E.D.Pa.1981). If, under state law, the debtor did not have an interest in property at the time the bankruptcy petition was filed, the automatic stay provisions cannot be applied to shield that property. *In re Fidelity American Mortg. Co.*, 19 B.R. 568 (Bkrtcy.E.D.Pa.1982); *Foulke v. Lavelle*, 308 Pa.Super. 131, 454 A.2d 56 (1982).

In his answer to the foreclosure action, Biby disclaimed any interest in the property and asserted that he was not a proper party because of his quit claim conveyance to Hillside. In Hillside's answer to the

foreclosure action, it claimed all right, title and interest to the property by virtue of the quit claim deed. Biby's bankruptcy schedules also reveal that he has never claimed any interest in the campground property. In its bankruptcy schedules Hillside has claimed the interest in the campground property under the contract for deed. Not until Biby was allowed to proceed in bankruptcy, and Hillside's bankruptcy proceedings were dismissed by the bankruptcy court because it did not qualify as a "debtor" under 11 U.S.C. § 109, did Biby attempt to question the validity of his assignment of the contract for deed to Hillside.

■■■■ Because the vendor is the person intended to be protected by the validity of a contractual prohibition against assignment, "a vendee cannot assert the invalidity of his own assignment in seeking to defeat his assignee." 6 R. Powell, The Law of Real Property § 847, at p. 77–45 (1984). It is clear under North Dakota law that a vendee's assignment of a contract for deed in derogation of a contract provision that it shall not be assigned without the consent of the vendor does not automatically void the assignment. In Syllabus 4 of *Star v. Norsteby*, 75 N.D. 563, 30 N.W.2d 718 (1948), this court held that a "[p]rovision in a contract for deed that it shall not be assigned without the consent of [the] vendor is one which [the] vendor may insist upon or waive as he sees fit." Although the Striegels have relied upon the assignment as an instance of default under the contract for deed, we do not view their actions as an attempt to void Biby's assignment to Hillside.

■■■■ We conclude that Biby had no interest in the campground property at the time he filed for bankruptcy because he had conveyed his interest to Hillside in April 1980. He cannot claim otherwise at this point in the proceedings. As a result, the automatic stay provisions of 11 U.S.C. § 362(a) had no effect on the district court's ruling in this case. Accordingly, we conclude that Hillside and its trustee

are the sole appellants with an interest at stake in this appeal.

## AMENDMENT NUNC PRO TUNC

Hillside asserts that the trial court abused its discretion in amending the partial judgments nunc pro tunc to include the Rule 54(b) certification. The test of whether or not an amendment nunc pro tunc is permissible is " 'whether on the one hand the change will make the record speak the truth as to what was actually determined or done, or intended to be determined or done by the court, or whether, on the other hand, it will alter such action or intended action.' " *Aabye v. Aabye*, 292 N.W.2d 92, 94 (N.D.1980) [quoting *State v. District Court of Fifth Judicial Dist.*, 110 Mont. 36, 98 P.2d 883, 885 (1940) ].

■■■ The trial court's comments during the July 1, 1983, proceedings indicate that the partial judgments were considered to be final. The trial court stated that the proceedings had "been going on long enough," and directed that counsel for Biby and Hillside prepare an order denying Striegel's motion to dismiss the counterclaims because the counterclaims had "been severed, in effect, or separated." The trial court also expressly authorized issuance of a "Writ of Special Execution." The partial judgment entered on July 5, 1983, provided that the judgment entered on July 14, 1982, was "res judicata to any further assertion of [Biby's] interests." We conclude that the trial court did not abuse its discretion in amending the judgment nunc pro tunc.

## RULE 54(b) CERTIFICATION

Hillside asserts that the trial court improvidently granted the Rule 54(b), NDRCivP, certification in this case. In *Union State Bank v. Woell*, 357 N.W.2d 234, 238 (N.D.1984), we quoted with approval from *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360, 364 (3d Cir.1975):

" 'In reviewing 54(b) certifications, other courts have considered the following factors, *inter alia:* (1) the relationship

between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Depending upon the facts of the particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b).' "

In its certificate and order for final judgment nunc pro tunc, the trial court stated:

"This court hereby certifies that there is no just reason for the delay of the entry of a final judgment on the plaintiffs' claim. The counterclaims deal with prayers for rescission or damages. The plaintiffs have asked for foreclosure of a defaulted contract for deed. Delaying entry of the plaintiffs' judgment would place the defendant back in possession of the real property, property which this court has already concluded should be in the plaintiffs' possession and property which the defendants have not redeemed in the previous time permitted by the Court. There is no counterclaim now pending which could or would result in the defendants regaining possession of the real property."

For reasons which appear later in this opinion, the trial court correctly concluded that no defense or counterclaim alleged by Hillside could result in its regaining possession of the property. We conclude that the trial court did not abuse its discretion in granting the Rule 54(b), NDRCivP, certification under the unique circumstances of this case.

## SUMMARY JUDGMENT

Hillside asserts that the district court erred in granting summary judgment on the Striegels' foreclosure action and in effect severing its defenses and counterclaims for separate consideration because their resolution "could significantly affect any judgment to be rendered concerning the cancellation of the Contract for Deed."

 The purpose of summary judgment is to promote the expeditious disposition of a legal conflict on its merits, without a trial, if no dispute as to material facts or inferences to be drawn therefrom exists or whenever only a question of law is involved. *Pioneer Credit Co. v. Medalen,* 326 N.W.2d 717 (N.D.1982). Even if factual disputes exist between the parties, summary judgment is appropriate if the law is such that the resolution of the factual dispute will not change the result. *Gowin v. Hazen Memorial Hosp. Ass'n,* 349 N.W.2d 4 (N.D.1984).

Hillside contends, through its defenses and counterclaims, that the Striegels made promises and that "these and other material omissions and misrepresentation of facts pertinent to the sale and purchase of the land described in the Contract for Deed and the campground facilities located thereon, constitute a fraud or a deception to the purchasers that renders the Contract for Deed either void or voidable." Hillside seeks to revoke the contract for deed and the security agreement, and to recover all payments made under the terms of the contract together with a "reasonable amount for the management of the property." It seeks compensatory and punitive damages for actual fraud, and attorney fees and costs "in regard to defense of the Plaintiffs' attempted cancellation of the invalid Contract for Deed."

In its memorandum opinion and order for partial judgment of June 2, 1982, the trial court stated:

"All of these affirmative defenses, it is claimed by Mr. Biby, make the contract for deed a void or voidable instrument.

"Of course, if this instrument is void, the defendant has no claim to this property, both real and personal. His only

**496**

relief, if his allegations are correct and so proven, is for the return of the monies previously paid. He cannot claim the contract is void and still attempt to claim the benefits of the contract."

Hillside argues that under *Langenes v. Bullinger,* 328 N.W.2d 241 (N.D.1982); *Jesz v. Geigle,* 319 N.W.2d 481 (N.D.1982); *Schumacher Homes, Inc. v. J & W Enterprises,* 318 N.W.2d 763 (N.D.1982); and *Bender v. Liebelt,* 303 N.W.2d 316 (N.D. 1981), any assertion of wrongdoing on the part of the vendor precludes summary judgment in a foreclosure action. The authorities cited by Hillside are distinguishable and do not precisely address the question. Given the nature of Hillside's counterclaims and the unique circumstances of this case, we are not persuaded that the trial court erred in granting summary judgment on the Striegels' foreclosure action.

Hillside asserts that the trial court erred in characterizing its request to "modify" the contract for deed as a claim for rescission rather than a claim for reformation. In its prayer for relief, Hillside requested that it "be allowed to modify the Contract so as to be able to make payments that are consistent with the capacity of the campground to provide adequate income ...."

In *Tallackson Potato Co., Inc. v. MTK Potato Co.,* 278 N.W.2d 417, 424 (N.D. 1979), we stated:

"Reformation is proper if, 'at the time of the execution of the agreement to sell, both parties intended to say something different from what was said in the instrument.' *Cokins v. Frandsen,* 141 N.W.2d 796, 799 (N.D.1966). While 'courts of equity have the power to reform written instruments to conform to the true intention of the parties' [*Oliver-Mercer Electric Cooperative, Inc. v. Fisher,* 146 N.W.2d 346, 355 (N.D.1966) ], they will not make new contracts by reforming existing contracts in a manner never considered, so obviously not intended by the parties."

While fraud is a ground for reformation of written instruments [§ 32-04-17, NDCC], fraud perpetrated to induce a

party to enter into the agreement itself is not a ground for its reformation, but is a ground for its rescission. *El Paso Natural Gas Co. v. Kysar Ins. Agency, Inc.,* 93 N.M. 732, 605 P.2d 240 (Ct.App.1979); *Prescott v. Matthews,* 20 Wash.App. 266, 579 P.2d 407 (1978); 76 C.J.S. *Reformation of Instruments* § 29 (1952); D. Dobbs, Handbook on the Law of Remedies § 9.5 (1973). *Cf. Metzler v. Bolen,* 137 F.Supp. 457 (D.N.D.1956). We have carefully reviewed the record in this case and have found no allegation that the parties agreed that the payments on the contract for deed would be dependent on "the capacity of the campground to provide adequate income." The allegations relate to fraud in the inducement, rather than fraud in the execution of the agreement. Reformation is therefore inapplicable as a matter of law. For that reason we conclude that the trial court did not err in granting summary judgment, notwithstanding that we consider Hillside's request to "modify" the contract for deed to have constituted a claim for reformation.

It is undisputed that Hillside failed to pay the monthly installments which were due and owing and failed to pay the 1981 real estate taxes. The contract for deed expressly provided that the failure to pay real estate taxes or any amount of principal and interest constituted default. The contract for deed also provided that "the time of payment shall be an essential part of this contract." Consequently, we conclude that the trial court did not err in granting summary judgment in favor of the Striegels in the foreclosure action or in severing Hillside's counterclaims for later consideration.

## STATUTORY CANCELLATION

Hillside asserts that the contract for deed could only be foreclosed by the statutory method outlined in Chapter 32–18, NDCC. This argument is without merit.

It is well settled in this state that cancellation of a contract for deed by notice pursuant to Chapter 32–18, NDCC, is not

an exclusive remedy. *E.g., Schumacher Homes, Inc. v. J & W Enterprises,* 318 N.W.2d 763 (N.D.1982). We have also ruled that an option for cancellation in a contract for deed does not make cancellation the vendor's exclusive remedy. *E.g., Yon v. Great Western Development Corp.,* 340 N.W.2d 43 (N.D.1983).

Hillside's assertions that a letter written by the Striegels in 1981 constituted both a notice of default binding them to the statutory cancellation method and a waiver of defaults under the contract for deed are also without merit.

### REDEMPTION

Hillside contends that the trial court should have allowed it a longer redemption period. Unlike cancellation by notice under Chapter 32–18, NDCC, cancellation by action is not subject to a statutorily prescribed period for redemption; the trial court is left to its discretion in the matter. *Bender v. Liebelt,* 303 N.W.2d 316 (N.D.1981). We find no abuse of that discretion in this case.

The "Final Judgment Nunc Pro Tunc" is affirmed.

ERICKSTAD, C.J., GIERKE, J., and ILVEDSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, participated in this case by assignment pursuant to § 27–17–03, N.D.C.C.

ILVEDSON, Surrogate Justice, sitting in place of VANDEWALLE, J., disqualified.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.