2005 ND 149

**HEART RIVER PARTNERS, a partnership, and Dave D. Mees and James W. Allen, partners, Plaintiffs and Appellants**

v.

**Darrell S. GOETZFRIED and Karen A. Goetzfried, Defendants and Appellees.**

No. 20050003.

Supreme Court of North Dakota.

Aug. 18, 2005.

Thomas D. Kelsch, Kelsch, Kelsch, Ruff & Kranda, Mandan, N.D., for plaintiffs and appellants.

Charles "Casey" L. Chapman, Chapman and Chapman, P.C., Bismarck, N.D., for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] Heart River Partners and its partners, David D. Mees and James W. Allen, (collectively referred to as the "Partnership") appealed from a summary judgment dismissing their lawsuit against Darrell and Karen Goetzfried for reformation of a warranty deed and for damages. We affirm.

I

[¶ 2] In March 2002, Mees approached the Goetzfrieds on behalf of the Partnership to purchase commercial property consisting of seven lots and three storage buildings in Mandan. The property is bordered by 4th Street and 5th Street and was subject to two separate special assessments for completed improvements on those streets. In March 2002, the costs for the improvements on 5th Street had been assessed and certified with a balance due of about $8,000, but the costs for the improvements on 4th Street had not been certified. A special assessment of $46,599.18 for the 4th Street improvements was certified in the fall of 2002.

[¶ 3] According to Darrell Goetzfried, he told Mees about both special assessments at a March 2002 meeting, and the Goetzfrieds agreed to pay the balance of the assessment for 5th Street but not the uncertified assessment for 4th Street. According to Mees, he did not recall being told about the uncertified assessment for the improvements on 4th Street. In his deposition, Mees testified:

Q. Okay. During that conversation Darrell Goetzfried told you that there had been work done on Fourth Street, did he not?

A. No.

Q. He didn't mention anything about Fourth Street?

A. No.

Q. Didn't mention anything about construction?

A. No.

Q. Nothing about sewers?

A. No.

Q. Wasn't mentioned at all?

A. No.

Q. Did you ask anything about improvements that had been done?

A. The only thing that was talked about was some specials for some water and sewer that had been put in on Fifth Street.

Q. Okay. So tell me, if you could, what was said about Fifth Street.

A. Water and sewer, that there was some specials on that.

Q. Okay. Was there any other conversation about that?

A. That he would—I'm not sure if it was that day. He said he would pay for the specials that were there.

Q. Okay. That he'd pay for the specials that were there, and those were his words?

A. Basically.

Q. Okay. That's what I'm asking. You're not saying those were his exact words. You're kind of paraphrasing?

A. Right.

Q. And, to your knowledge, he was talking at that time about Fifth Street?

A. Right.

Q. Did you actually walk over to Fifth Street to look at it?

A. No.

Q. Did he just mention Fifth Street by name?

A. I believe not. He just looked that direction—we were looking that direction and he pointed to that direction. I knew it was Fifth Street.

Q. Okay. That's what I was getting to. So at some point in this conversa-tion he points over in the direction of Fifth Street and talks about the specials; is that correct?

A. Right.

Q. And he said that he would pick up those specials?

A. Right.

Q. Okay. Was there any other talk about special assessments?

A. No.

Q. In fact, up until the date of clos-ing, Mr. Mees, other than this one con-versation that you just related to me, was there any discussion at all about special assessments?

A. There possibly could have been maybe something, you know, about him picking up them specials, but other than that, no.

Q. Okay. What I'm asking—under-stand this as you hear this—I'm asking for you to recall for me, can you recall any other conversation? You said maybe there might have been. Can you remember any?

A. No.

Q. So what you actually remember is the one conversation?

A. Right.

Q. And that would have been either, what, the first or second time that you met at the property?

A. Right.

Q. And that's when Mr. Goetzfried pointed over towards Fifth Street and said he'd pick up the specials?

A. Right.

Q. And is it fair that other than that conversation, you can't actually tell me about any other conversation prior to closing in which special assessments were even discussed?

A. Right.

In a subsequent affidavit, Mees stated the Goetzfrieds agreed to pay for all the special assessments against the property and did not specify that the agreement to pay was limited to the special assessment for the 5th Street improvements or to the special assessment that had been certified.

[¶ 4] Before the closing, the Goetzfrieds provided Mees with a copy of the annual tax statement for the property, which showed the certified special assessment for the improvements on 5th Street. On April 10, 2002, the parties executed an offer to purchase the property for $465,000. The offer to purchase said the property was "free and clear of all encumbrances," and it did not refer to either special assessment or indicate who would pay for special assessments. On May 1, 2002, the parties executed a warranty deed for the property, which stated the property was "free from all encumbrances, except installments of special assessments or assessments for special improvements which have not been certified to the County Auditor for collection." The Goetzfrieds' "seller's affidavit" stated there were "no unrecorded contracts for sale, liens, encumbrances or easements which affect the marketability of title to said property." Although the parties' closing statement prorated the 2002 installment for the special assessment for the improvements on 5th Street, Darrell Goetzfried thereafter paid the balance for that assessment. In the fall of 2002, the Auditor certified a special assessment of $46,599.18 for the improvements on 4th Street.

[¶ 5] The Partnership subsequently sued the Goetzfrieds, seeking reformation of the deed to require the Goetzfrieds to pay all the special assessments for the property, and $45,599.18, plus interest, for the special assessment for the improvements on 4th Street. The Goetzfrieds admitted they agreed to pay the special assessment for 5th Street, but denied they had agreed to pay all the certified and uncertified special assessments for the property.

[¶ 6] The trial court granted the Goetzfrieds' motion for summary judgment, concluding the warranty deed unambiguously required the Partnership to pay the special assessment for the improvements on 4th Street. The court concluded there was no evidence of a mutual mistake by the parties, nor were the Goetzfrieds aware the Partnership was under a mistaken impression about the assessments. The court decided the Goetzfrieds did not commit constructive fraud, because there was no special relationship between the Goetzfrieds and the Partnership that placed an affirmative duty of disclosure on the Goetzfrieds. The court decided the Goetzfrieds had no affirmative duty to the Partnership to disclose the uncertified special assessment for the improvements on 4th Street. The court also decided the Goetzfrieds did not commit actual fraud when they signed a disclosure statement indicating there were no unrecorded liens or unsatisfied encumbrances against the property, because the pending special assessment for the improvements on 4th Street was not at that time an encumbrance on the property under N.D.C.C. § 42-24-03.

[¶ 7] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-01.

II

[¶ 8] In *State v. North Dakota State University*, 2005 ND 75, ¶ 8, 694 N.W.2d 225 (quoting *Zuger v. State*, 2004 ND 16, ¶¶ 7–8, 673 N.W.2d 615 (citations

omitted)), we explained our standard of review for summary judgment:

> Summary judgment is a procedural device for promptly disposing of a lawsuit without a trial if there are no genuine issues of material fact or inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. "Whether summary judgment was properly granted is 'a question of law which we review de novo on the entire record.' " On appeal, this Court decides if the information available to the trial court precluded the existence of a genuine issue of material fact and entitled the moving party to summary judgment as a matter of law. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial.

Mere speculation is not enough to defeat a motion for summary judgment, and a scintilla of evidence is not sufficient to support a claim.

■■■ [¶ 9] Although the party seeking summary judgment has the burden to clearly demonstrate there is no genuine issue of material fact, the court must also consider the substantive evidentiary standard of proof when ruling on a motion for summary judgment. *Swenson v. Raumin,* 1998 ND 150, ¶ 9, 583 N.W.2d 102; *Estate of Stanton,* 472 N.W.2d 741, 743 (N.D. 1991). In considering the substantive standard of proof, the court must consider whether the trier of fact "could reasonably find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not." *Stanton,* at 743 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### III

### A

[¶ 10] The Partnership argues there are genuine issues of material fact regarding its claim for reformation of the warranty deed. The Partnership argues the warranty deed does not reflect the parties' intent, because of fraud or mistake, and the trial court erred in granting summary judgment on the reformation claim.

■■ [¶ 11] "The construction of a written contract to determine its legal effect is generally a question of law." *Pear v. Grand Forks Motel Assocs.,* 553 N.W.2d 774, 779 (N.D.1996). A court interprets a written contract to give effect to the mutual intention of the parties as it existed at the time of contracting. N.D.C.C. § 9–07–03; *Pear,* at 779. The parties' intentions must be ascertained from the writing alone, if possible. N.D.C.C. § 9–07–04; *Pear,* at 779. In the absence of an ambiguity, a written contract supersedes any prior oral agreement or negotiations between the parties. N.D.C.C. § 9–06–07; *Pear,* at 779.

■■ [¶ 12] Parol evidence is admissible, however, in an action to reform a written contract on the grounds of fraud or mutual mistake to establish the alleged fraud or mistake and to correct the instrument to conform to the agreement or intention of the parties. *Ell v. Ell,* 295 N.W.2d 143, 149 (N.D.1980). This Court has said, "Reformation is an '[e]quitable remedy used to reframe written contracts to reflect accurately [the] real agreement between contracting parties.' " *Biteler's Tower Serv., Inc. v. Guderian,* 466 N.W.2d 141, 143 (N.D.1991) (quoting *Black's Law Dictionary* 1152 (5th ed.1979)). Section 32–04–17, N.D.C.C., provides for the equi-

table remedy of reformation of a written contract:

> When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

[¶ 13] In considering reformation claims under similar statutes that were derived from the same common source as N.D.C.C. § 32–04–17, other courts have recognized the purpose of reformation is to correct a written contract to effectuate the common intention of the parties, which was incorrectly reduced to writing. *Lemoge Elec. v. County of San Mateo*, 46 Cal.2d 659, 297 P.2d 638, 640 (1956); *Bailard v. Marden*, 36 Cal.2d 703, 227 P.2d 10, 13 (1951); *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149, 152 (S.D.1986). *See* 66 Am.Jur.2d *Reformation of Instruments* § 1 (2001) ("Reformation is based on the premise that the parties had reached an agreement concerning the instrument, but while reducing their agreement to written form, and as a result of mutual mistake or fraud, some provision or language was omitted from, inserted, or incorrectly stated in the instrument intended to be the expression of the actual agreement of the parties."). In *Bailard*, at 13 (citations omitted), the California Supreme Court explained:

> To obtain the benefit of this statute, it is necessary that the parties shall have had a complete mutual understanding of all the essential terms of their bargain; if no agreement was reached, there would be no standard to which the writing could be reformed.

Otherwise stated, "[I]nasmuch as the relief sought in reforming a written instrument is to make it conform to the real agreement or intention of the parties, a definite intention or agreement on which the minds of the parties had met must have pre-existed the instrument in question." Our statute adopts the principle of law in terms of a single intention which is entertained by both of the parties. "Courts of equity have no power to make new contracts for the parties, . . . [N]or can they reform an instrument according to the terms in which one of the parties understood it, unless it appears that the other party also had the same understanding." If this were not the rule, the purpose of reformation would be thwarted.

[¶ 14] This Court has said a party who seeks reformation has the burden to prove by clear and convincing evidence that a written agreement does not fully or truly state the agreement the parties intended to make. *Ell*, 295 N.W.2d at 150. Parol evidence of an alleged mutual mistake must be clear, satisfactory, specific, and convincing, and a court of equity will not grant reformation upon a mere preponderance of evidence, but only upon certainty of error. *Id.* Any evidence that tends to show the true intention of the parties, whether it be evidence of conduct or declarations of the parties extrinsic to the contract or documentary evidence, is admissible. *Id.* at 149. *See* N.D.C.C. § 32–04–19. In an action for reformation, a presumption arises from the terms of a written instrument that it correctly expresses the parties' true agreement and intent. *Ell*, at 150. "Courts will not make a new contract through reformation of a written instrument in a manner never considered or intended by the parties." *Id.*

[¶ 15] The Partnership argues there are issues of material fact about

mistake which support its claim for reformation. Ordinarily, whether there has been a mistake sufficient to support a reformation claim is a question of fact. *See City of Fargo v. D.T.L. Props., Inc.*, 1997 ND 109, ¶ 16, 564 N.W.2d 274. In *Mau v. Schwan*, 460 N.W.2d 131, 134–36 (N.D. 1990), this Court discussed mistake in the context of a reformation action. This Court cited the definition of mistake in N.D.C.C. § 9–03–13 and said a mutual mistake that will justify reformation requires that, at the time of the execution of the agreement, both parties intended to say something different from what was said in the document. *Mau*, at 135 (citing *Meyer v. McCormick, Inc.*, 445 N.W.2d 21, 24 (N.D.1989)). *See Anderson v. Selby*, 2005 ND 126, ¶¶ 12–13, 700 N.W.2d 696. *See also* 66 Am.Jur.2d *Reformation of Instruments* at § 21 (mistake cannot be mutual if the minds of the parties did not meet in a common intent, and for a mutual mistake to justify the reformation of an agreement, it must be shown that at the time of the execution of the agreement, both parties intended to say something different from what was said in the instrument).

[¶ 16] In *Lemoge Elec.*, 297 P.2d at 640–41 (citations omitted), the California Supreme Court explained:

Reformation may be had for a mutual mistake or for the mistake of one party which the other knew or suspected, but in either situation the purpose of the remedy is to make the written contract truly express the intention of the parties. Where the failure of the written contract to express the intention of the parties is due to the inadvertence of both of them, the mistake is mutual and the contract may be revised on the application of the party aggrieved. When only one party to the contract is mistaken as to its provisions and his mistake is known or suspected by the other, the contract may be reformed to express a single intention entertained by both parties. Although a court of equity may revise a written instrument to make it conform to the real agreement, it has no power to make a new contract for the parties, whether the mistake be mutual or unilateral.

[¶ 17] The parties have contrary views about whether they agreed the Goetzfrieds would pay the special assessments for the improvements for 4th Street. According to the Goetzfrieds, Darrell Goetzfried told Mees about both special assessments at the March 2002 meeting, and the Goetzfrieds agreed to pay only for the improvements for 5th Street. According to Mees, however, he did not recall hearing anything about the assessment for 4th Street at that meeting, and, in a subsequent affidavit, Mees claimed the Goetzfrieds agreed to pay for all the special assessments against the property without any limitation for only the improvements on 5th Street, or for only the specials that had been certified at that time. Federal courts have held that a party may not use a subsequent affidavit to impeach or controvert, without explanation, prior sworn testimony. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495–96 (5th Cir.1996). *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3rd* § 2726 (1998). More important, however, the conflicting factual versions of the parties' negotiations indicate there may be a dispute about the terms of the parties' oral agreement, but that dispute is not a material fact for purposes of the reformation claim because there was no common intention entertained by both parties. The warranty deed unambiguously stated the property was "free from all encumbrances, except installments of special assessments or as-

sessments for special improvements which had not been certified to the County Auditor for collection." The written deed conformed to the Goetzfrieds' version of the facts and does not support a claim that both parties intended to say something different from what was said in the deed.

[¶ 18] Moreover, the Partnership does not claim the Goetzfrieds knew about the Partnership's alleged mistake or misunderstanding, and there is no evidence the Goetzfrieds "knew or suspected" a mistake by the Partnership "at the time" the deed was executed. *See Anderson*, 2005 ND 126, ¶¶ 14–15, 700 N.W.2d 696; *Mau*, 460 N.W.2d at 135; *Buskohl*, 398 N.W.2d at 153. In *Anderson*, at ¶ 14, the sellers sought reformation of a warranty deed, claiming the deed mistakenly did not include a reservation of a flowage easement and the buyer knew about or suspected the mistake. In *Anderson*, at ¶ 15, there was evidence the buyer instructed his real estate agent not to say anything about the flowage easement during the closing, and the purchase price for the land was consistent with the market price for the land with a flowage easement. There was also evidence the buyer told the sellers there "was a mistake, which [the buyer] understood." *Id.* We reversed a summary judgment dismissal of the sellers' reformation claim, concluding the evidence supported an inference there was a mistake that the buyer at the time knew or suspected. *Id.* In this case, the Partnership has not cited any evidence to support an inference the Goetzfrieds knew or suspected a mistake by the Partnership at the time the deed was executed. We conclude the trial court did not err in granting the Goetzfrieds summary judgment on the Partnership's claim for reformation based upon mistake.

### B

[¶ 19] The Partnership also argues reformation is appropriate because of fraud. A party alleging fraud has the burden of proving each element by clear and convincing evidence. *First Union Nat'l Bank v. RPB 2, LLC*, 2004 ND 29, ¶ 22, 674 N.W.2d 1; *Luallin v. Koehler*, 2002 ND 80, ¶ 26, 644 N.W.2d 591; *Smith v. Land O'Lakes, Inc.*, 1998 ND 219, ¶ 12, 587 N.W.2d 173. Fraud is ordinarily treated as a question of fact. *Wagner v. Wagner*, 2000 ND 132, ¶ 12, 612 N.W.2d 555.

[¶ 20] The Partnership argues the Goetzfrieds were guilty of actual fraud under N.D.C.C. § 9–03–08 for making an affirmative fraudulent representation or for suppressing a known fact. The Partnership relies upon evidence the Goetzfrieds provided the Partnership with tax statements showing only the certified assessments for the property and upon the Goetzfrieds' affirmation at closing that there were no other unrecorded liens or encumbrances on the property. The Partnership also argues the Goetzfrieds suppressed known facts. The Partnership claims the Goetzfrieds' affirmative representations and suppression of facts induced it to enter into the contract.

[¶ 21] This Court has said that although fraud may be a ground for reformation of a written instrument, fraud perpetrated to induce a party to enter into the agreement is a ground for rescission, but is not a ground for reformation. *Earthworks, Inc. v. Sehn*, 553 N.W.2d 490, 495 (N.D.1996); *Striegel v. Dakota Hills, Inc.*, 365 N.W.2d 491, 496 (N.D.1985). *See Vermilyea v. BDL Enters., Inc.*, 462 N.W.2d 885, 887–88 (S.D.1990). *See generally* Dan B. Dobbs, *The Law of Remedies* § 9.5 (1973); 2 Dan B. Dobbs, *The Law of Remedies* § 9.5 (2d ed.1993); John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 9–35 (3d ed.1987); 27 Richard A. Lord, *Williston on Contracts* § 69:55 (4th ed.2003); 66 Am.Jur.2d *Reformation of Instruments* at § 23.

[¶ 22] In *Sehn,* 553 N.W.2d at 495, a defendant's counterclaim alleged he was fraudulently induced to enter into an agreement to terminate a business relationship. The defendant claimed the agreement allocated $100,000 to him for a covenant not to compete when the parties' intended allocation of that amount of money was for the corporation's physical assets. *Id.* This Court recognized fraud perpetrated to induce another to enter into a contract is not a ground for reformation of the agreement, but is a ground for rescission of the agreement. *Id.* In *Sehn,* at 495, the defendant affirmed the contract and did not seek rescission. This Court said the written agreement explicitly allocated $100,000 for the covenant not to compete and $140,000 for stock that comprised the physical assets of the corporation and held parol evidence was not admissible to vary or contradict the explicit terms of the agreement. *Id.*

[¶ 23] In *Striegel,* 365 N.W.2d at 492, the plaintiffs sold campground property to the defendant by contract for deed, and plaintiffs sued to foreclose and cancel the contract for deed, alleging the defendant failed to make required monthly payments. The defendant counterclaimed, asserting fraud and material misrepresentations by the plaintiffs regarding the capacity of the campground to provide adequate income for the payments. *Id.* The defendant sought to "modify" the contract for deed to make payments consistent with the capacity of the campground to provide adequate income. *Id.* at 492, 496. This Court treated the defendant's request to "modify" as a claim for reformation. *Id.* at 496. This Court recognized that although fraud is a ground for reformation of a written instrument, fraud perpetrated to induce a party to enter into the agreement itself is not a ground for reformation, but is a ground for rescission. *Id.* This Court said there were no allegations the parties agreed the payments under the contract for deed would be dependant on the capacity of the campground to provide adequate income and held the defendant's allegations related to fraud in the inducement rather than fraud in the execution of the agreement. *Id.* This Court held reformation did not apply to the defendant's claim as a matter of law. *Id.*

[¶ 24] Fraud may be a ground for reformation of a written contract when a party is misled or deceived into signing a written contract that differs from the parties' prior oral agreement. *See* Dobbs, *The Law of Remedies* at § 9.5; Calamari & Perillo, *The Law of Contracts* at § 9–35; 27 Lord, *Williston on Contracts* at § 69:54; 66 Am.Jur.2d *Reformation of Instruments* at § 23.

[¶ 25] The Partnership does not claim the parties reached an agreement, but by fraudulent misrepresentations failed to write the agreement down to truly reflect their contract. The Partnership's allegations, however, relate to fraudulent representations during negotiations and not fraudulent representations as to the contents of the written agreement. The Partnership's claims about the terms of the agreement are inconsistent with the plain language of the warranty deed that the property was "free from all encumbrances, except installments of special assessments or assessments for special improvements which have not been certified to the County Auditor for collection." We conclude reformation based on actual fraud does not apply to the Partnership's claims.

[¶ 26] The Partnership also claims the Goetzfrieds had a duty to inform Mees about the uncertified special assessments, and their failure constitutes constructive fraud under N.D.C.C. § 9–03–09. In *Bourgois v. Montana–Dakota Utils. Co.,* 466 N.W.2d 813, 819 (N.D.1991), this Court discussed constructive fraud in

the context of a commercial transaction. This Court said constructive fraud arises from the breach of a duty that is owed ordinarily because of a fiduciary, confidential, or other special relationship between the parties. *Id.* In *Bourgois,* at 819, this Court said constructive fraud warrants rescission of the sale of a home as an exception to the rule of caveat emptor, but declined to extend that rule to commercial transactions, and said a fiduciary or confidential or other special relationship does not ordinarily exist when business persons deal with each other at arm's length.

[¶ 27] This was a commercial transaction with the parties dealing at arm's length, and the existence of a tax assessment district is a matter of public record. *See* N.D.C.C. ch. 40–22. Moreover, the Partnership approached the Goetzfrieds about the property, and the Partnership, or its agents, prepared the documents for the sale of the property. We decline to extend the rule of constructive fraud to the Partnership's claims for reformation in this commercial transaction, and we conclude the Goetzfrieds did not have an affirmative duty to disclose the existence of the tax assessment district to Mees so that their failure to do so can constitute constructive fraud. We conclude the trial court did not err in granting summary judgment on the Partnership's claim for reformation based on actual or constructive fraud.

### IV

[¶ 28] We affirm the summary judgment.

[¶ 29] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.