2009 ND 179

**Harold SPITZER, Plaintiff and Appellant**

v.

**Neil R. BARTELSON and Delila Bartelson, Defendants and Appellees.**

No. 20090124.

Supreme Court of North Dakota.

Oct. 13, 2009.

Kent A. Reierson, Williston, ND, for plaintiff and appellant.

Bruce A. Selinger, Dickinson, ND, for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Harold Spitzer appeals from a district court amended judgment dismissing his complaint seeking to reform a quitclaim deed on the basis of a mutual mistake. We hold the district court did not abuse its discretion by admitting parol evidence to determine whether a mutual mistake existed, and the district court was not clearly erroneous to find Harold Spitzer failed to establish a mutual mistake sufficient to support reformation. We affirm.

I.

[¶ 2] John Bartelson Sr. and Hattie Spitzer, formerly Hattie Bartelson, were the parents of four sons: John Bartelson Jr., George Bartelson, Glen Bartelson, and Ralph Bartelson. Defendants Neil and Delila Bartelson are Ralph Bartelson's son and daughter-in-law. In 1918, John Bartelson Sr. died. After his death, Hattie Bartelson married George Spitzer, and the couple had one son: plaintiff Harold Spitzer.

[¶ 3] In 1921, Hattie Spitzer purchased a quarter section of land in Mountrail County. Fifty years later, on February 19, 1971, Hattie and George Spitzer entered into a contract for deed with Neil and Delila Bartelson to sell the quarter section for $6,000. Although George Spitzer signed the contract, he owned no interest in the property at that time. Attorney Q.R. Schulte drafted the contract for deed, which called for Neil and Delila Bartelson to make a down payment of $1,500 and to pay the remainder at a rate of $500 per

year plus five percent interest. Upon full payment, the contract required Hattie Spitzer to provide Neil and Delila Bartelson with a general warranty deed. The contract for deed also contained the following mineral reservation: "Grantors reserve a 50% mineral interest including gas and oil, in, on, or under the above described premises with the right of ingress and egress for the purpose of mining, drilling, or exploring for the same."

[¶ 4] Hattie Spitzer died intestate on December 10, 1973. On March 5, 1976, the Mountrail County court distributed the quarter section to her heirs. George Spitzer inherited one-half, while each of Hattie Spitzer's four living sons, including Harold Spitzer, inherited a one-eighth interest. On April 1, 1976, the four sons simultaneously conveyed their interests to George Spitzer by quitclaim deed. Following the conveyance, George Spitzer owned the entire quarter section and its minerals, subject to the contract for deed. Shortly thereafter, on April 19, 1976, George Spitzer conveyed the entire quarter section to Neil and Delila Bartelson by quitclaim deed. Attorney Gary Lerberg drafted the deed, which did not contain any reservation of mineral interests.

[¶ 5] Under the contract for deed's original payment schedule, Neil and Delila Bartelson were not required to fully pay until 1978. The contract for deed called for a general warranty deed, not a quitclaim deed. In 1974, after Hattie Spitzer's death but before they received the deed from George Spitzer, Neil and Delila Bartelson executed an oil and gas lease for 100 percent of the minerals underlying the quarter section. The couple also executed similar leases in 1995 and 2005. George Spitzer never leased any mineral interests in the quarter section.

[¶ 6] George Spitzer died intestate on June 25, 1985, and Harold Spitzer was named as his sole heir. On May 16, 2007, Harold Spitzer filed a complaint against Neil and Delila Bartelson, alleging George Spitzer's failure to include the reservation of mineral interests in the quitclaim deed was the result of a mutual mistake and seeking to reform the deed on that basis. In their Answer to the complaint, Neil and Delila Bartelson denied any mutual mistake took place.[1]

[¶ 7] The parties went to trial on December 9, 2008. Harold Spitzer testified he was not aware his parents had entered into a contract for deed with Neil and Delila Bartelson in 1971. Similarly, he stated he did not know George Spitzer executed a quitclaim deed to the couple in 1976. Harold Spitzer testified he first learned Neil and Delila Bartelson received all of the quarter section's mineral rights from his brother, John Bartelson Jr., in approximately 1979. Harold Spitzer stated John Bartelson Jr. told him Neil Bartelson had "talked my dad out of the minerals."

[¶ 8] Neil Bartelson testified the parties to the contract for deed agreed Hattie Spitzer would reserve a fifty percent mineral interest for her life and the minerals would "go with the land" after her death. According to Neil Bartelson, he never discussed the mineral reservation with Hattie Spitzer or George Spitzer after executing the contract for deed. Neil Bartelson testified he met George Spitzer at attorney Lerberg's office on the day George Spitzer executed the quitclaim deed, but he does not recall the details of the meeting. Neil Bartelson affirmatively answered that George Spitzer executed the quitclaim deed in fulfillment of the contract for deed. When asked why George Spitzer executed

---

1. Neither party raised the doctrine of laches   before the district court or this Court.

it in 1976, Neil Bartelson testified he did not recall whether he paid the full amount before it was due under the contract. Lastly, Neil Bartelson stated he and his wife did not pay any consideration beyond the $6,000 plus interest required by the contract for deed.

[¶ 9] John Bartelson Jr. testified he knew about the parties' negotiations over the contract for deed while they were on-going, although he was not present. Like Neil Bartelson, John Bartelson Jr. stated the parties intended for the mineral rights Hattie Spitzer reserved in the contract "to go back to the land [when she passed on]." John Bartelson Jr. also testified that, after inheriting fractional interests in the quarter section following Hattie Spitzer's death, he and his brothers did not discuss the mineral rights before deeding their interests to George Spitzer. "[E]verybody knew [the mineral rights] were supposed to go back to the land. There was never a discussion about it." Finally, John Bartelson Jr. denied telling Harold Spitzer that Neil Bartelson had talked George Spitzer out of the mineral rights.

[¶ 10] The district court found Neil Bartelson and John Bartelson Jr. were the only witnesses with personal knowledge of the intentions of the parties to the contract for deed and quitclaim deed. While the court found Neil Bartelson's testimony self-serving, it noted that "John [Bartelson Jr.] really does not 'have a dog in this fight', as he has never made any claim to the minerals in question." Therefore, the court found John Bartelson Jr.'s testimony "particularly persuasive." The court also found the quitclaim deed contains no language that ties it to the contract for deed. Rather, the court stated the quitclaim deed "is a document wherein George [Spitzer] ... conveys any interest he has in the property to Neil and Delila[ ] [Bartelson], consistent with all parties under-standings." Based upon these findings, the district court held Harold Spitzer failed to prove "by evidence that is clear, satisfactory, specific, and convincing" that the quitclaim deed did not express the true intentions of the parties. As a result, the district court dismissed Harold Spitzer's complaint with prejudice.

## II.

[¶ 11] At trial, Harold Spitzer objected to the admission of Neil Bartelson and John Bartelson Jr.'s testimony about the intent of the parties to the contract for deed and quitclaim deed. On appeal, Harold Spitzer argues the district court abused its discretion by admitting their testimony because it violated the parol evidence rule and constituted hearsay.

[¶ 12] When reviewing decisions to admit evidence, this Court applies an abuse of discretion standard. *In re J.S.L.*, 2009 ND 43, ¶ 18, 763 N.W.2d 783. "The district court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination." *State v. Schmidkunz*, 2006 ND 192, ¶ 15, 721 N.W.2d 387.

[¶ 13] A deed is a written contract subject to the parol evidence rule. *Des Lacs Valley Land Corp. v. Herzig*, 2001 ND 17, ¶ 9, 621 N.W.2d 860. "The parol evidence rule is a rule of substantive law and precludes use of evidence of prior oral negotiations and agreements to vary the terms expressed in a written contract." *Id.* at ¶ 7. Section 9–06–07, N.D.C.C., codifies the parol evidence rule in part. It provides:

*Written contract supersedes oral negotiations.* The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral

negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument. The rule seeks to give certainty to a transaction that parties have reduced to writing by protecting against "the doubtful veracity and the uncertain memory of interested witnesses." *Des Lacs Valley Land Corp.*, at ¶ 8 (quoting *Gajewski v. Bratcher*, 221 N.W.2d 614, 626 (N.D.1974)).

[¶ 14] However, "it is well-established that parol evidence is admissible in a suit to reform a written instrument on the grounds of fraud or mutual mistake of the parties." *Ell v. Ell*, 295 N.W.2d 143, 149 (N.D.1980). *Accord Heart River Partners v. Goetzfried*, 2005 ND 149, ¶ 12, 703 N.W.2d 330; *City of Fargo v. D.T.L. Properties, Inc.*, 1997 ND 109, ¶ 12, 564 N.W.2d 274; *Mau v. Schwan*, 460 N.W.2d 131, 134 (N.D.1990); *Ives v. Hanson*, 66 N.W.2d 802, 805 (N.D.1954). "The nature of [a reformation] action is such that it is outside the field of operation of the parol evidence rule, since the court does not receive parol testimony to vary the contract of the parties but to show what their contract really was." 66 Am.Jur.2d *Reformation of Instruments* § 114 (2001) (footnotes omitted). If courts refused to admit parol evidence in reformation cases, the rule would become "an instrument of the very fraud or mistake it was designed to prevent." *Ell*, at 150.

■ [¶ 15] In reformation actions, courts "can properly look into the surrounding circumstances and take into consideration *all* facts which disclose the intention of the parties." *Id.* (emphasis in original). "Any evidence that tends to show the true intention of the parties, whether it be evidence of conduct or declarations of the parties extrinsic to the contract or documentary evidence, is admissible." *Heart River Partners*, 2005 ND 149, ¶ 14, 703 N.W.2d 330. *See also* 66 Am. Jur.2d, *supra* § 114 (footnotes omitted) ("[A]ny competent testimony which tends to prove ... the intention of the parties is admissible. A witness in a position to know may testify concerning the intention of the parties to an agreement, to the same effect as to any other fact."). The district court did not abuse its discretion by admitting Neil Bartelson and John Bartelson Jr.'s testimony to establish whether a mutual mistake caused George Spitzer to execute the quitclaim deed without a reservation of mineral rights.

■ [¶ 16] In addition, we hold the district court did not abuse its discretion by admitting Neil Bartelson and John Bartelson Jr.'s testimony over Harold Spitzer's objection that it constituted inadmissible hearsay. Rule 801, N.D.R.Ev., defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." While hearsay is generally inadmissible, N.D.R.Ev. 802, an exception is made for "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)...." N.D.R.Ev. 803(3).

[¶ 17] The testimony to which Harold Spitzer objected included only a single statement repeating an out-of-court declaration. Neil Bartelson testified: "[Hattie Spitzer] told me that half the minerals would go with the land." Before Neil Bartelson could continue, Harold Spitzer's counsel objected to the testimony as inadmissible hearsay. The district court overruled the objection, citing this Court's decision in *Wehner v. Schroeder*, which states courts may consider all facts disclosing the parties' intention in an action for reformation. 354 N.W.2d 674, 678 (N.D.1984) (citing *Ell*, 295 N.W.2d at 150). The *Wehner* decision illustrates the nature of testimoni-

al evidence a court may admit in a reformation claim. 354 N.W.2d 674. In *Wehner*, the trial record included testimony from a defendant's son that "he recalled his father telling him that the Wehners retained 50 percent of the mineral rights to the land at issue." *Id.* at 678.

[¶ 18] Although Neil Bartelson repeated Hattie Spitzer's out-of-court declaration, it was admissible under N.D.R.Ev. 803(3) to show her state of mind and intention at the time the parties agreed to the contract for deed. *See* 6 *Wigmore on Evidence*, § 1729 (Chadbourn rev. 1976) ("[T]here are many instances in which a prior or subsequent state of mind is relevant to show the state of mind at a specific time ... and wherever this state of mind is an intent, prior or subsequent declarations of an existing intent would properly be admissible."); *see also Reserve Life Ins. Co. v. Goodloe*, 316 S.W.2d 443, 446 (Tex. Civ.App.1958) (in a claim for reformation of an insurance contract, holding the trial court did not abuse its discretion by allowing a witness to repeat out-of-court statements made by a deceased declarant as evidence of the declarant's state of mind in executing the contract); *Sine v. Harper*, 118 Utah 415, 222 P.2d 571, 577 (1950) (in a claim for reformation of a deed, stating: " '[W]hen the intention ... of a certain person at a particular time ... is material to the issues under trial, evidence of such person's declarations at the time indicative of his then mental state, even though hearsay, is competent as within an exception to the hearsay rule.' ") (quoting 3 Jones, *Commentaries on Evidence* 2012 (2d ed.)). As Neil Bartelson's testimony is admissible under N.D.R.Ev. 803(3) to demonstrate Hattie Spitzer's state of mind and intention in executing the contract for deed, the district court did not abuse its discretion by admitting it into evidence.

[¶ 19] Beyond this single statement, Neil Bartelson and John Bartelson Jr. did not repeat out-of-court statements as part of the testimony to which Harold Spitzer objected. Rather, they testified about their own subjective understandings of the parties' intentions in executing the contract for deed and quitclaim deed. While out-of-court statements may have created their understandings, N.D.R.Ev. 801 requires the actual repetition of out-of-court statements to constitute "hearsay." Neil Bartelson and John Bartelson Jr. did not repeat such statements. The district court did not abuse its discretion by admitting Neil Bartelson and John Bartelson Jr.'s testimony into evidence over Harold Spitzer's hearsay objection. Because the nature of reformation actions requires a court to discern parties' original intentions, courts may admit such testimonial evidence. *See Heart River Partners*, 2005 ND 149, ¶ 14, 703 N.W.2d 330 ("Any evidence that tends to show the true intention of the parties, whether it be evidence of conduct or declarations of the parties extrinsic to the contract or documentary evidence, is admissible.").

[¶ 20] The sole basis argued by Harold Spitzer for the reformation of the quitclaim deed is the discrepancy between that instrument and the contract for deed. Thus, evidence of Hattie Spitzer's intent at the time she signed the contract was relevant. But the controlling factor in this case was George Spitzer's intent at the time he signed the quitclaim deed.

III.

[¶ 21] Harold Spitzer also argues the district court was clearly erroneous to find he failed to establish a mutual mistake caused George Spitzer to execute the quitclaim deed without a reservation of mineral interests.

[¶ 22] Reformation is an equitable remedy used to rewrite a contract to accurately reflect the parties' intended agreement. *Ritter, Laber & Assoc., Inc. v. Koch Oil, Inc.,* 2007 ND 163, ¶ 12, 740 N.W.2d 67. *See also* 66 Am.Jur.2d, *supra* § 1 (2001) (" 'Reformation' is that remedy by means of which a written instrument is made or construed to express or conform to the real intention of the parties, when some error or mistake has been committed.").

[¶ 23] Section 32–04–17, N.D.C.C., provides the statutory basis for reformation:

*Revision of contract for fraud or mistake.* When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

Whether a contract contains a mistake sufficient to support a claim for reformation is a question of fact. *Heart River Partners,* 2005 ND 149, ¶ 15, 703 N.W.2d 330. Under N.D.R.Civ.P. 52, this Court does not set aside a district court's findings of fact unless they are "clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." "A finding is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if an appellate court is left with a definite and firm conviction a mistake has been made." *D.T.L. Properties, Inc.,* 1997 ND 109, ¶ 16, 564 N.W.2d 274.

[¶ 24] In reformation claims, courts presume the terms of an instrument accurately express the actual agreement of the parties. *Ell,* 295 N.W.2d at 150. "Courts will not make a new contract through reformation of a written instrument in a manner never considered or intended by the parties." *Id.* When considering whether to reform a written instrument, "courts should exercise great caution and require a high degree of proof, *especially when death has sealed the lips of the original parties or a party.*" *Ives,* 66 N.W.2d at 805 (emphasis in original) (citation omitted). "[A] party who seeks reformation has the burden to prove by clear and convincing evidence that a written agreement does not state the agreement the parties intended." *Heart River Partners,* 2005 ND 149, ¶ 14, 703 N.W.2d 330. Therefore, courts "will not grant the high remedy of reformation even upon a mere preponderance of the evidence, but only upon the certainty of error." *Ell,* at 150 (quoting *Oliver–Mercer Elec. Coop., Inc. v. Fisher,* 146 N.W.2d 346, 355 (N.D. 1966)).

[¶ 25] Harold Spitzer principally argues that, because Neil and Delila Bartelson do not dispute the content of the contract for deed, it conclusively demonstrates George Spitzer intended to reserve fifty percent of the mineral rights in the subsequent quitclaim deed. As such, Harold Spitzer claims the district court was clearly erroneous to find he failed to establish a mutual mistake sufficient to justify reformation of the quitclaim deed.

[¶ 26] The district court properly focused on George Spitzer's intent when he executed the quitclaim deed rather than the intent of the parties to the contract for deed. Because George Spitzer did not include a reservation of mineral interests in the deed, the law required the district court to presume that was his intention. At trial, the only evidence Harold Spitzer introduced to rebut this presumption was the contract for deed, which included a

reservation of mineral interests in favor of the grantors. While the contract for deed is relevant, in view of the totality of the evidence, we do not find the district court was clearly erroneous to conclude the contract was insufficient to prove a mutual mistake in the execution of the quitclaim deed.

[¶ 27] At trial, Neil Bartelson and John Bartelson Jr. both testified the parties to the contract for deed only intended for Hattie Spitzer to enjoy a life estate in the reserved minerals. Neil and Delila Bartelson's execution of a lease for 100 percent of the mineral rights, after Hattie Spitzer's death but before George Spitzer executed the quitclaim deed, supports their claim. Harold Spitzer produced no testimonial evidence to rebut the testimony of Neil Bartelson and John Bartelson Jr. Rather, Harold Spitzer erroneously claimed their testimony was inadmissible to contradict the terms of the contract for deed, which was the only evidence of George Spitzer's intent he produced.

[¶ 28] Harold Spitzer also failed to adequately address evidence suggesting the possibility that the contract for deed did not adequately demonstrate George Spitzer's intent at the time he executed the quitclaim deed. Although George Spitzer signed the contract for deed, he did not own any interest in the quarter section at that time. When he executed the deed to Neil and Delila Bartelson, more than five years after signing the contract, he owned the entire quarter section. This change in circumstances may have caused him to form a different intent from that reflected in the contract for deed. George Spitzer may not have executed the quitclaim deed merely in satisfaction of the contract for deed. Although Neil Bartelson testified George Spitzer executed the deed in satisfaction of the contract, George Spitzer executed it two years before Neil and Delila

Bartelson were required to fully pay, and Neil Bartelson could not recall whether he and his wife had paid the full price at that time. The contract for deed called for a general warranty deed, but George Spitzer provided Neil and Delila Bartelson with a quitclaim deed. The mere discrepancy between the contract for deed and quitclaim deed regarding mineral reservations is insufficient to demonstrate the later document was signed in error. Here, the later circumstances are suggestive of a change in intent, and thus the issue becomes an issue of fact.

[¶ 29] Harold Spitzer was required to prove by clear and convincing evidence that a mutual mistake caused George Spitzer to execute the deed without the reservation of mineral interests. Based upon the conflicting evidence regarding George Spitzer's intent, we cannot say the district court was clearly erroneous to hold Harold Spitzer failed to meet this high burden of proof.

## IV.

[¶ 30] We hold the district court did not abuse its discretion by admitting parol evidence to determine whether a mutual mistake existed, and the district court was not clearly erroneous to find Harold Spitzer failed to establish a mutual mistake sufficient to support reformation of the quitclaim deed. We affirm.

[¶ 31] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.