2015 ND 215

**Allan M. FREIDIG and Robin K. Freidig, Plaintiffs and Appellees**

v.

**Laura J. WEED, a.k.a. Laura Weed; all other persons known or unknown claiming any estate or interest in, or lien or encumbrance upon, the property described in the Complaint, Defendants.**

**Laura J. Weed, a.k.a. Laura Weed, Appellant.**

No. 20140387.

Supreme Court of North Dakota.

Aug. 25, 2015.

John T. Traynor, Jr., Devils Lake, N.D., for plaintiffs and appellees.

Clint D. Morgenstern, Grand Forks, N.D., for defendants and appellant.

KAPSNER, Justice.

[¶ 1]   Laura Weed appeals from a judgment reforming a warranty deed and quieting title in a tract of land to Allan and Robin Freidig. Weed argues the district court erred in reforming the warranty deed. We conclude the court did not clearly err in determining a mutual mistake was made in describing the property conveyed in the warranty deed. We affirm.

I

[¶ 2]   In 2003, Weed hired David Hovendick, a registered land surveyor, to survey her house and a five-acre tract of land around her house on the east side of Devils Lake for her lender. According to Hovendick, Weed informed him that she did not want to include any land under Devils Lake in the survey because she did not want the submerged land encumbered by her mortgage. Hovendick's certificate of survey followed Weed's instructions and does not reference the Devils Lake shoreline nor does it extend her property's boundary line below the shoreline.

[¶ 3]   In 2004, Weed hired Hovendick to survey and evenly divide another tract of land south of her five-acre parcel into two lots, each about one acre in size. Hovendick's certificates of survey for both lots said the "[p]roperty lines shall extend or shorten to the water's edge with the rise and fall of Devils Lake dictating the West boundary line/shoreline of said property." According to Hovendick, he used witness corners for those two lake front lots rather than monument corners so an owner could identify the property line as the water rises or falls and he would have used monument corners if Weed had instructed him to set the property corners of those two lots at the shoreline.

[¶ 4]   In 2004, Weed employed the Freidigs' real estate firm to sell one of the

lots as "lake front property" with "excellent slope to water." The lot was sold to John and LaMae Henry by warranty deed describing the west boundary of the conveyed land in language tracking Hovendick's certificate of survey that the property lines shall extend or shorten to the water's edge with the rise and fall of Devils Lake dictating the west boundary of the lot.

[¶ 5] In 2005, Weed employed the Freidigs' real estate firm to sell the other lot as "lake front property" with "excellent slope to water." The lot was sold to Marty Robertson by warranty deed describing the west boundary of the lot "along said water's edge" of Devils Lake and containing "0.97 acres more or less." The deed was prepared by the same attorney who prepared the earlier Weed–Henry deed and stated the legal description for the lot was obtained from Hovendick's certificate of survey, but the deed did not contain the language describing the west boundary of the lot as extending or shortening to the water's edge with the rise and fall of Devils Lake. According to the attorney who prepared the deeds, he did not recall any specific discussions or conversations regarding the reason for the difference in language in the certificate of survey and the Weed–Robertson warranty deed.

[¶ 6] In 2009, Robertson sold the lot to the Freidigs by warranty deed using the same property description as the Weed–Robertson warranty deed. In 2013, a discrepancy in the lake side boundary of the property described in the Weed–Robertson and Robertson–Freidig warranty deeds was discovered. The Freidigs sued Weed and all others claiming an interest in the lot for reformation to reflect the property line for the lot extended to the water's edge with the rise and fall of Devils Lake and to quiet title in the disputed tract of land to the Freidigs.

[¶ 7] Weed answered, claiming she intended to convey only .97 acres of land to Robertson and it was not her intent to convey any land to Robertson under the water's edge of Devils Lake. She alleged the Weed–Robertson deed did not contain an error in the description of the conveyed land. According to Weed, her earlier deed conveying adjacent property to the Henrys mistakenly described the conveyed property as land below the water's edge of Devils Lake and she did not intend to convey land below the water's edge in the Weed–Robertson deed.

[¶ 8] After a bench trial, the district court determined Weed intended to sell Robertson lakeshore property with the west boundary extending or shortening to the water's edge with the rise and fall of Devils Lake and the Weed–Robertson warranty deed contained a drafting error and mistaken legal description of the lot. The court ruled the omission from the Weed–Robertson deed of the language tracking the surveyor's certificate of survey for the west boundary of the lot was sufficient to support reformation and reformed the Weed–Robertson deed to include language conveying title to the water's edge of Devils Lake as the lake level rose or fell. The court quieted title in that strip of land to the Freidigs.

II

[¶ 9] Weed argues her testimony establishes she did not intend to convey any land below the water's edge of Devils Lake to Robertson and the district court clearly erred in finding an ambiguity or a mistaken description of the property in the Weed–Robertson warranty deed. She argues grants are construed to ascertain the grantor's intent and her grant to Robertson clearly and unambiguously did not convey land below the water's edge of Devils Lake. She argues there was no evidence of

a mutual mistake or a mistake by one party which the other knew or suspected and there was not clear and convincing evidence to support reformation of the Weed–Robertson deed.

[¶ 10] Deeds are construed in the same manner as contracts. *Hallin v. Lyngstad*, 2013 ND 168, ¶ 8, 837 N.W.2d 888. "The construction of a written contract to determine its legal effect is generally a question of law." *Pear v. Grand Forks Motel Assocs.*, 553 N.W.2d 774, 779 (N.D.1996). A court interprets a written contract to give effect to the mutual intention of the parties as it existed at the time of contracting. N.D.C.C. 9–07–03; *Pear*, at 779. The parties' intentions must be ascertained from the writing alone, if possible. N.D.C.C. 9–07–04; *Pear*, at 779. In the absence of an ambiguity, a written contract supersedes any prior oral agreement or negotiations between the parties. N.D.C.C. 9–06–07; *Pear*, at 779.

[¶ 11] If a written contract is unambiguous, however, parol evidence is nevertheless admissible in an action to reform the contract on the grounds of mutual mistake to establish the alleged mistake and to correct the instrument to conform to the agreement or intention of the parties. *Ell v. Ell*, 295 N.W.2d 143, 149 (N.D. 1980). We have said a " 'mutual mistake that will justify reformation requires that, at the time of the execution of the agreement, both parties intended to say something different from what was said in the document.' " *Arndt v. Maki*, 2012 ND 55, ¶ 12, 813 N.W.2d 564 (quoting *Heart River Partners v. Goetzfried*, 2005 ND 149, ¶ 15, 703 N.W.2d 330). Reformation is an equitable remedy used to reframe written contracts to reflect accurately the real agreement between contracting parties. *Spitzer v. Bartelson*, 2009 ND 179, ¶ 22, 773 N.W.2d 798. Section 32–04–17, N.D.C.C., provides for the equitable remedy of reformation of a written contract:

> When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

[¶ 12] A party seeking reformation has the burden to prove by clear and convincing evidence that a written agreement does not fully or truly state the agreement the parties intended to make. *Ell*, 295 N.W.2d at 150. Parol evidence of an alleged mutual mistake must be clear, satisfactory, specific, and convincing, and a court of equity will not grant reformation upon a mere preponderance of evidence, but only upon certainty of error. *Id.* Any evidence that tends to show the true intention of the parties, whether it be evidence of conduct or declarations of the parties extrinsic to the contract or documentary evidence, is admissible. *Id.* at 149. *See* N.D.C.C. 32–04–19. "In considering whether or not a mutual mistake exists, the court can properly look into the surrounding circumstances and take into consideration *all* facts which disclose the intention of the parties." *Ell*, at 150 (emphasis in original). Some courts have said circumstantial evidence alone may be sufficient to clearly and convincingly establish grounds for reformation. *Lister v. Sorge*, 260 Cal.App.2d 333, 67 Cal.Rptr. 63, 66–67 (1968) (grounds for reformation must be established by clear and convincing evidence and reformation may be based solely on circumstantial evidence); *Lunceford v. Houghtlin*, 326 S.W.3d 53, 64 (Mo.Ct. App.2010) (circumstantial evidence may establish mutual mistake provided the nat-

ural and reasonable inferences clearly and decidedly prove the mistake). *Cf. WFND, LLC v. Fargo Marc, LLC,* 2007 ND 67, ¶¶ 25–26, 730 N.W.2d 841 (fraud must be proved by clear and convincing evidence and intent to defraud usually is not susceptible of direct proof but may be established by circumstantial evidence); *State v. Noorlun,* 2005 ND 189, ¶ 20, 705 N.W.2d 819 (circumstantial evidence alone can be sufficient to sustain guilty verdict if circumstantial evidence has such probative force as to enable trier of fact to find defendant guilty beyond a reasonable doubt).

[¶ 13] Whether a contract contains a mistake sufficient to support a claim for reformation is a question of fact. *Johnson v. Hovland,* 2011 ND 64, ¶ 11, 795 N.W.2d 294; *Spitzer,* 2009 ND 179, ¶ 23, 773 N.W.2d 798; *Goetzfried,* 2005 ND 149, ¶ 15, 703 N.W.2d 330. Under N.D.R.Civ.P. 52, we will not set aside a district court's findings of fact unless they are clearly erroneous, and due regard shall be given to the opportunity of the district court to judge the credibility of the witnesses. "A finding is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if an appellate court is left with a definite and firm conviction a mistake has been made." *Spitzer,* at ¶ 23 (quoting *City of Fargo v. D.T.L. Properties, Inc.,* 1997 ND 109, ¶ 16, 564 N.W.2d 274.)

[¶ 14] Although Weed testified she did not intend to convey land below the water's edge of Devils Lake to Robertson, circumstantial evidence in this record supports a contrary finding that she intended to convey land below the water's edge to Robertson. According to Hovendick, the surveying evidence for Weed's five-acre parcel in 2003 and for the division of equal lots in 2004 indicates Weed expressed an intent to exclude land below Devils Lake

from the 2003 survey but did not express an intent to exclude land below the water's edge of Devils Lake from the 2004 survey. Hovendick also testified that if Weed had wanted the property line for the lots at the water's edge in 2004, he would have used monument corners at the boundary corners rather than witness corners. The legal description in the Weed–Robertson deed refers to the legal description in Hovendick's certificate of survey, which states the property line shall extend or shorten as the water's edge of Devils Lake rises or falls.

[¶ 15] The listing agreements and advertisements leading up to the Weed–Robertson transaction, including the prior Weed–Henry deed, support an inference of mutual mistake in the property description in the Weed–Robertson deed and that Weed intended to convey lake front property to Robertson and the lake front boundary included the rising and falling water level of Devils Lake. According to the attorney who drafted the warranty deeds, he did not recall any specific discussions or conversations to change the property description in the Weed–Robertson deed from the property description for that lot in Hovendick's certificate of survey. Weed also testified she never told anyone to have the property description in the Weed–Robertson deed different from Hovendick's certificate of survey for the lot. In light of the circumstantial evidence, the district court was not required to accept as credible Weed's testimony about her intent. Under N.D.R.Civ.P. 52, the district court assesses witness credibility and we give due regard to the court's opportunity to assess the credibility of the witnesses. We are not left with a definite and firm conviction the court made a mistake in finding a mutual mistake.

[¶ 16] We conclude the court did not clearly err in finding grounds for reforming the Weed–Robertson deed.

## III

[¶ 17]   Weed argues the doctrine of equitable estoppel bars the Freidigs' claim of mistake because the Freidigs and Robertson did not review the property description in the relevant warranty deeds and the Freidigs negligently facilitated one or both transactions.   Weed concedes she failed to raise the equitable estoppel issue in the district court, and we will not address issues raised for the first time on appeal. *E.g. Peters–Riemers v. Riemers,* 2002 ND 49, ¶ 9, 641 N.W.2d 83.

## IV

[¶ 18]   We affirm the judgment.

[¶ 19]   GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.