# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3836

_____

Northern Oil and Gas, Inc.

*Plaintiff - Appellee*

v.

Carol Kay Moen; Orville A. Moen

*Defendant Third Party Plaintiffs - Appellants*

v.

Limsco Limited Partnership

*Third Party Defendant - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: September 10, 2015
Filed: December 10, 2015

_____

Before LOKEN, MELLOY, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

The parties in this case dispute the continued validity of an oil and gas lease covering land in Williams County, North Dakota. Northern Oil and Gas, Inc., ("Northern Oil") and Limsco Limited Partnership ("Limsco") sought judgment declaring that the lease remained valid and quieting title in their respective interests in the lease. Carol Kay Moen and Orville A. Moen (collectively, "the Moens") sought declaratory judgment finding that the lease had expired as to the disputed land. The district court[1] granted Northern Oil's and Limsco's motions for summary judgment, and the Moens appealed. We affirm.

I.

In 1984, the Moens' predecessors in interest entered into an agreement to lease oil and gas interests to Northern Oil and Limsco's predecessor. The lease applies to five sections of land in Williams County, North Dakota, described as follows:

Township 155 North, Range 99 West
Section 2:    Lots 3 (39.99), 4 (39.91), S/2NW/4
Section 3:    Lots 1 (39.89) . . . 3 (39.95), 4 (39.99), S1/2N1/2, SW1/4
Section 4:    E1/2SE1/4, SW1/4SE1/2, SE1/2SW1/2
Section 9:    E1/2NE1/3 . . .
Section 10:   SW1/4NE1/4 . . .

The lease describes the land using the Public Land Survey System ("PLSS"), a rectangular survey system used to subdivide and describe public land in the western United States. *The Public Land Survey System*, U.S. Geological Survey, http://nationalatlas.gov/articles/boundaries/a_plss.html (last visited Dec. 4, 2015).

---

[1] The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota, adopting the report and recommendation of the Honorable Karen K. Klein, United States Magistrate Judge for the District of North Dakota.

The PLSS divides land into six-square-mile townships. *Id.* These townships are further divided into thirty-six sections, which each span one square mile. *Id.* Each township is assigned a number, based on how far north or south the township is located from the survey's starting point, and a range, based on the township's distance east or west of that same point. *Id.* Each section within the township is also assigned a number, one through thirty-six. *Id.* Thus, the PLSS assigns a unique three-number combination—township, range, and section—to describe the exact location of every one-square-mile section of land under the survey. This dispute involves a 160-acre plot of land constituting the southwest quarter of Section 3, Township 155 North, Range 99 West.

Interpreting the lease requires understanding the concepts of spacing and pooling. A spacing unit is an administratively created boundary used "to prevent waste, to avoid the drilling of unnecessary wells, [and] to protect correlative rights." N.D.C.C. § 38-08-07(1). The North Dakota Industrial Commission ("NDIC") assigns a spacing unit to each well "for drilling, producing, and proration purposes." *See id.* (granting the NDIC authority to set spacing units); N.D. Admin. Code § 43-02-03-01(46) (defining spacing units). When multiple parties own land within a spacing unit, they must combine, or "pool," their separate interests in the land and divide between them all profits from production within the spacing unit. *See* N.D.C.C. § 38-08-08(1).

The lease at issue provides for a primary term of five years, beginning on July 5, 1984, and extends "thereafter as long as oil and gas is [sic] produced from said land or Lessee is engaged in drilling or reworking operations thereon." Under this clause, production from any land under the lease would be sufficient to continue the lease beyond its primary term with respect to all land covered by the lease. However, the lease also contains a "Pugh clause," a special provision designed to "protect the lessor from the anomaly of having the entire property held under a lease by production from

-3-

a very small portion." *Sandefer Oil & Gas, Inc. v. Duhon*, 961 F.2d 1207, 1209 (5th Cir. 1992). The Pugh clause here provides, in relevant part:

> This lease shall terminate at the end of the primary term as to all of the leased lands except those lands located within the same section of a production unit or spacing unit[2] prescribed by law or administrative authority on which is located a well producing or capable of producing oil or gas in commercial quantities . . . .

At the end of the lease's primary term, Section 3 contained two active wells: one well was assigned a 160-acre spacing unit comprised of the northwest quarter of Section 3, and the other well was assigned a 160-acre spacing unit comprised of the northeast quarter of Section 3. However, the southwest quarter, the land at issue here, was not included within any spacing unit with an active well at that time.

The parties dispute whether the Pugh clause divides the lease at spacing-unit boundaries or section boundaries. The Moens claim that the Pugh clause divides the lease at spacing-unit boundaries such that the lease expired as to the disputed land because the land did not fall within a spacing unit with an active well at the end of the lease's primary term. Under their interpretation, the wells on the northeast and northwest quarters of Section 3 maintained the lease only as to those quarter sections. In turn, Northern Oil and Limsco claim that the Pugh clause divides the lease at section boundaries such that production anywhere within a one-square-mile section of land maintains the lease as to that entire section. Under their reading, production elsewhere on Section 3 maintained the lease as to the disputed land.

Northern Oil filed its complaint in this matter, and the Moens filed an answer, a counterclaim against Northern Oil, and a third-party complaint against Limsco.

---

[2] The terms "spacing unit" and "production unit" are used interchangeably in the lease.

After all parties moved for summary judgment, the district court referred each of the summary-judgment motions to the magistrate judge for a report and recommendation. The magistrate judge recommended that the lease be found valid and enforceable as to the southwest quarter of Section 3, that Northern Oil's and Limsco's motions for summary judgment be granted, and that the Moens' motion for summary judgment be denied. The district court issued an order adopting the magistrate judge's report and recommendation, granting Northern Oil's and Limsco's motions for summary judgment, and denying the Moens' motion for summary judgment. The Moens timely appealed.

II.

We review the district court's grant of summary judgment *de novo*. *Hackett v. Standard Ins. Co.*, 559 F.3d 825, 829 (8th Cir. 2009). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In a diversity suit, this court applies the substantive law of the forum state, here North Dakota. *See Urban Hotel Dev. Co., Inc. v. President Dev. Group, L.C.*, 535 F.3d 874, 877 (8th Cir. 2008). Under North Dakota law, a contract's language will "govern its interpretation if the language is clear and explicit and does not involve an absurdity." *Deckert v. McCormick*, 857 N.W.2d 355, 359 (N.D. 2014) (quoting N.D.C.C. § 9-07-02). North Dakota courts construe words in their ordinary and popular sense unless the parties use them in a technical sense. *Grynberg v. Dome Petroleum Corp.*, 599 N.W.2d 261, 265 (N.D. 1999) (citing N.D.C.C. § 9-07-09). "A contract must be construed as a whole to give effect to each provision, if reasonably possible." *Johnson v. Shield*, 868 N.W.2d 368, 371 (N.D. 2015) (citing N.D.C.C. § 9-07-06).

North Dakota courts presume that oil and gas leases are indivisible such that production on any part of the land will maintain the lease beyond the primary term for all land covered by the lease. *Tank v. Citation Oil & Gas Corp.*, 848 N.W.2d 691, 696 (N.D. 2014) (citing *Egeland v. Cont'l Res, Inc.*, 616 N.W.2d 861, 866 (N.D. 2000)). "A Pugh clause generally provides for a severance of the lease where less than all of the leasehold is included in a single [spacing] unit, but it can vary widely in form." *Id.* at 697. In order to overcome the presumption that an oil and gas lease is indivisible, a Pugh clause must "clearly and explicitly direct a division of the lease into several parts." *Egeland*, 616 N.W.2d at 867.

The parties in this case dispute the meaning of the phrase "the same section of" in the lease's Pugh clause, which states, in relevant part:

> This lease shall terminate at the end of the primary term as to all of the leased lands except those lands located within the same section of a production unit or spacing unit prescribed by law or administrative authority on which is located a well producing or capable of producing oil or gas in commercial quantities . . . .

Northern Oil and Limsco argue that the term "section" in the Pugh clause refers to the PLSS definition, *i.e.*, a one-square-mile tract of land. They claim that the Pugh clause severs the lease at section boundaries such that production from any part of a one-square-mile section extends the lease as to that entire section. The Moens, in contrast, claim that the Pugh clause divides the lease at spacing-unit boundaries, not section boundaries. They argue that the definition of the term "section" is irrelevant, and they instead focus on the preposition—the same section "of" a spacing unit. Since the Pugh clause uses "of," the Moens assert that whatever "section" means, the "section" must be part "of" the spacing unit. Thus, because the disputed land did not fall within any spacing unit, the Moens argue that the land could not have fallen within a "section" of a spacing unit, either.

At the outset, we note that neither side has proposed an interpretation of the Pugh clause that gives meaning to both of the disputed terms, "section" and "of." The Moens' reading ignores the term "section." They do not propose any definition or explain how their interpretation makes use of the term. While Northern Oil and Limsco's interpretation makes use of the term "section," their reading requires us to redefine the relevant preposition so that the Pugh clause extends the lease as to all land in the same section "as" a spacing unit with a producing well. However, for the reasons explained below, we find Northern Oil and Limsco's interpretation more persuasive and thus adopt their position that the Pugh clause divides the lease at PLSS-section boundaries.

## A.

As an initial matter, we agree with Northen Oil and Limsco that the term "section" refers to a one-square-mile tract of land under the PLSS. When interpreting and defining terms in oil and gas agreements, the North Dakota Supreme Court has consistently relied on the *Williams & Meyers Oil and Gas Law Manual of Terms*. *See, e.g.*, *Egeland*, 616 N.W.2d at 866; *Tank*, 848 N.W.2d at 696. *Williams & Meyers* contains one definition for the word "section": "An area of one square mile (640 acres). There are 36 sections in a township." 8 P. Martin & B. Kramer, *Williams & Meyers Oil and Gas Law Manual of Terms* 952 (2013). The manual is consistent with other legal resources routinely used by this court. *See, e.g.*, *Northland Cas. Co. v. Meeks*, 540 F.3d 869, 875 (8th Cir. 2008) (using Black's Law Dictionary to define the word "furnish" in an insurance policy). These volumes uniformly define "section" in the real-estate context as a plot of land containing one square mile. *See, e.g.*, *Black's Law Dictionary* 1557 (10th ed. 2014) (defining "section" as "[a] piece of land containing 640 acres, or one square mile. Traditionally, public lands in the United States were divided into 640-acre squares, each one called a 'section.'"); *Webster's New College Dictionary* 1022 (3d ed. 2008) (defining "section" as "a land unit of 640 acres or one square mile, equal to 1/36 of a township"); *New Oxford*

*American Dictionary* 1578 (3d ed. 2010) (defining "section" as "a piece of land one square mile in area forming one of the 36 subdivisions of a township").

In addition to the term's ordinary meaning, we also find telling the original contracting parties' use of the term "section" in other parts of the lease to refer to PLSS sections. While the lease does not specifically reference the PLSS, it describes the land under the lease using the PLSS three-number model by assigning a number to the township, range, and section of each plot of land to provide its exact location. The parties do not dispute that "Township 155 North, Range 99 West, . . . Section 3," refers to a one-square-mile tract of land.

The Moens contend that the meaning of the term "section" outside of the Pugh clause does not dictate its meaning within the Pugh clause. The Moens note that the original contracting parties did not capitalize the word "section" in the Pugh clause, but they did capitalize the term throughout the rest of the lease when referring to specific PLSS sections. The Moens suggest that the parties intentionally capitalized "Section" when using its specialized meaning, *i.e.*, a one-square-mile tract of land, but did not capitalize the term when using it in its ordinary sense. However, a likelier explanation for the discrepancy is that all uses of the word "section" outside of the Pugh clause refer to particular sections of land covered by the lease—which should be capitalized as proper nouns—whereas the Pugh clause refers to sections generally. We see no reason to give the term "section" in the Pugh clause a different meaning from its use elsewhere in the lease. Thus, we conclude that the term "section" as used in the Pugh clause refers to one-square-mile tracts of land, consistent with the PLSS.

B.

Our inquiry does not end by defining "section" under the Pugh clause because the Moens assert that the definition of "section" is irrelevant. They argue that the use of the preposition "of" in the phrase "the same section 'of' a [spacing] unit"

establishes that production maintains the lease only as to land within a spacing unit. Because the disputed land is not contained within a spacing unit, they assert that production from other wells in Section 3 does not maintain the lease and therefore the lease expired as to that land.

We are tasked with choosing between two interpretations that each ignore parts of the Pugh clause. Though we agree with their proposed definition of "section," we recognize that Northern Oil and Limsco's reading is nonetheless flawed because their interpretation construes "the same section 'of' a spacing unit" instead to mean "the same section [as] a spacing unit." However, even recognizing this flaw, we find their reading more persuasive.

The Moens' reading does more damage to the plain language of the Pugh clause because they ignore the term "section," an important word used repeatedly—and, as explained above, consistently—throughout the lease. Further, their interpretation renders meaningless the entire phrase "the same section of" in the Pugh clause: if the original contracting parties had intended to divide the lease at spacing-unit boundaries, the Pugh clause should have stated that the lease terminates "except as to those lands located within ~~the same section of~~ a production unit or spacing unit." *See, e.g.*, *Anderson v. Hess*, 733 F. Supp. 2d 1100, 1102 (D.N.D. 2010) (interpreting Pugh clause providing that "this lease shall terminate . . . as to all of the leased lands except those within a producing or spacing unit"). We find it unlikely that the original contracting parties inadvertently added a four-word phrase containing a key term used repeatedly throughout the lease; in contrast, it seems considerably more likely that the parties misused a single preposition when drafting the Pugh clause. *See Freidig v. Weed*, 868 N.W.2d 546, 549 (N.D. 2015) ("A court interprets a written contract to give effect to the mutual intention of the parties as it existed at the time of contracting.") (citing N.D.C.C. 9-07-03); *Egeland*, 616 N.W.2d at 864 (noting that a court must interpret a contract so as "to determine the true intent

of the parties"). Thus we adopt Northern Oil and Limsco's interpretation of the Pugh clause as dividing the lease at section boundaries.

The Moens attempt to overcome this conclusion by emphasizing the history and purpose of Pugh clauses. They rely primarily on *Tank v. Citation Oil & Gas, Corp.* for the proposition that Pugh clauses must be read to protect the lessor. 848 N.W.2d at 700. But *Tank* represents a straightforward case of contract interpretation that focused on the plain language of the Pugh clause. In *Tank*, the lease at issue contained a drilling-operations clause that conflicted with a Pugh clause; the drilling clause, if read broadly, would have superceded the Pugh clause and rendered it inoperative. *Id.* The Court sensibly interpreted the lease to give effect to both clauses. *Id.* To the extent that the Court invoked the history and purpose of Pugh clauses, it did so to determine whether the Pugh clause or drilling-operations clause should prevail when the clauses were in conflict. *See id.*

Neither factor that the *Tank* court relied upon is present here. First, the Pugh clause does not conflict with any other clause; rather, the issue here is whether the language in the Pugh clause severs the lease at section boundaries or spacing-unit boundaries. Second, adopting Northern Oil and Limsco's interpretation of the Pugh clause does not render the clause inoperative because the lease presumably terminated as to any of the other four sections if they did not contain spacing units with producing wells at the end of the primary term.

The Moens' remaining arguments lack merit. First, they argue that Northern Oil and Limsco's interpretation violates a provision of the Lease that limits the right to pool because their reading "effectively pool[s]" the southwest quarter of Section 3 with the existing spacing units within the section. Pooling involves the division of profits between owners of land within a single spacing unit, *see* N.D.C.C. § 38-08-08(1), but does not implicate the validity of an underlying lease. Second, they assert that the inclusion of a Pugh clause in a lease creates a presumption that the lease will

expire at the end of the primary term and that the burden is on the lessee to establish that the lease should not expire.  They cite no authority to support this claim, which directly contradicts *Egeland*.  *See* 616 N.W.2d at 866-67 (holding that in order to overcome presumption that oil and gas leases are indivisible, a Pugh clause must divide the lease "clearly and explicitly").

Accordingly, we agree with the district court that the lease remains valid because production from other areas in Section 3 maintains the lease as to the entire section.

III.

For the foregoing reasons, we affirm.

_____