2016 ND 32

In the Matter of the ESTATE OF
Lowell H. VAAGE, Deceased,

Correne Vaage, as Special Personal
Representative of the Estate of Lowell
H. Vaage, Plaintiff and Appellant

v.

The State of North Dakota, the Estate
of Kenneth Vaage; and his surviving
widow, Verna L. Vaage; and their
children; James Vaage, Gregory
Vaage; Bruce Vaage; and Kathleen
M. Hettenbough; the Estate of Don-
ald Vaage, and his surviving widow,
Mae L. Vaage, and their child, Gary
Vaage—if living, and all other persons
interested in their estates, if deceased;
and all other persons unknown claim-
ing any estate or interest in or lien or
encumbrance on the property de-
scribed in the Complaint, Defendants

James Vaage, Gregory Vaage and
Bruce Vaage, Appellees.

No. 20150121.

Supreme Court of North Dakota.

Feb. 18, 2016.

Larry M. Baer (argued), West Des Moines, IA, and Rauleigh D. Robinson (appeared), Menoken, N.D., for plaintiff and appellant.

Scott M. Knudsvig (argued) and Matthew H. Olson (on brief), Minot, N.D., for defendants and appellees. Estate of Vaage.

McEVERS, Justice.

[¶ 1] Correne Vaage, surviving spouse and special personal representative of the Estate of Lowell H. Vaage ("Lowell Vaage estate" or "Estate"), appeals from a judgment dismissing its claim to reform a personal representative's deed issued by the John Vaage estate to Lowell Vaage. We affirm, concluding the district court's finding the Lowell Vaage estate failed to prove fraud or mistake sufficient to reform the personal representative's deed was not clearly erroneous.

I

[¶ 2] Lowell Vaage's father, John Vaage, owned 600 surface acres and 275 mineral acres in Burke County. In 1973, John Vaage and Lowell Vaage entered into a contract for deed for the sale of the real property. Within the legal description, the contract for deed stated "excepting and reserving, an undivided one-half interest in and to all the ... minerals" beneath the property. The contract also provided the final payment was due on or before January 15, 1983, and a warranty deed would be issued to Lowell Vaage upon satisfaction of the contract.

[¶ 3] John Vaage died on May 23, 1983, before Lowell Vaage satisfied the contract for deed. One of John Vaage's other sons, Kenneth Vaage, was appointed personal representative of John Vaage's estate. After Lowell Vaage made the final payment on the contract for deed in March 1984, Kenneth Vaage issued a personal representative's deed to Lowell Vaage for the property. Following the legal description, the deed stated "[e]xcepting and reserving an undivided one-half interest in and to the remaining ... minerals" beneath the property. In May 1984, Kenneth Vaage issued another personal representative's deed conveying 137.5 mineral acres to John Vaage's three sons, Kenneth Vaage, Donald Vaage, and Lowell Vaage, in equal proportions. Lowell Vaage died in April 2003.

[¶ 4] In 2012, the Lowell Vaage estate sued the heirs of Kenneth Vaage and Donald Vaage ("Vaage defendants"), claiming the March 1984 personal representative's deed, by reserving a one-half interest in the remaining minerals, did not conform to the language of the 1973 contract for deed, which reserved a one-half interest in all minerals beneath the property. The Estate alleged that, under the 1973 contract for deed, John Vaage intended to convey all 275 mineral acres under the property to Lowell Vaage. The Estate requested the court to reform the personal representative's deed and declare the Estate the owner of all 275 mineral acres.

[¶ 5] The parties agreed that, at a minimum, the March 1984 personal representative's deed conveyed 137.5 mineral acres to Lowell Vaage and he received 45.8333 mineral acres under the May 1984 personal representative's deed. The parties thus agree that, out of the 275 mineral acres owned by John Vaage, the Lowell Vaage Estate owns 183.3333 and 91.6666 are in dispute.

[¶ 6] Both parties moved for summary judgment in early 2013. The Estate argued the March 1984 personal representative's deed was fraudulently altered and must be reformed to conform to the 1973 contract for deed. The Vaage defendants argued only the March 1984 personal representative's deed must be looked at to ascertain John Vaage's intent. The district court denied both parties' motions. The court concluded neither summary judgment nor reformation would be grant-

ed to either party. The court also concluded the personal representative of John Vaage's estate was bound to honor the intent of John Vaage as stated in the 1973 contract for deed, and the mineral reservation language of the March 1984 personal representative's deed did not mirror the language of the 1973 contract for deed.

[¶ 7] Both parties moved for summary judgment again in late 2013. The Estate argued the Duhig rule, under the March 1984 personal representative's deed, precluded a reservation of minerals to the John Vaage estate. The Estate alternatively argued the language of the purported reservation clause contained in either the 1973 contract for deed or the March 1984 personal representative's deed is vague, ambiguous, and unenforceable. The Estate claimed for purposes of the motion, it made no difference whether any fraud was committed or whether a basis existed to reform the March 1984 personal representative's deed. The Vaage defendants argued the Duhig rule did not apply to the March 1984 personal representative's deed, and the deed is not vague or ambiguous. The district court denied the motions, concluding the Estate's alternative arguments precluded summary judgment. The court also concluded material issues of fact existed, which precluded summary judgment.

[¶ 8] At trial, the Estate argued the March 1984 personal representative's deed was fraudulently altered. To support this argument, the Estate provided testimony from a document examiner that the words "the remaining" in the personal representative's deed appeared to be out of alignment and may have been inserted into the deed at a later date. The document examiner testified he could not say when the words were inserted or why they may have been inserted at a later date. He also testified he could not rule out an innocent

explanation for the words appearing out of alignment.

[¶ 9] The Estate also offered the pretrial deposition testimony of Correne Vaage to support its fraud argument. She testified the recorded March 1984 personal representative's deed was not the same deed she saw in the attorney's office on the day Lowell Vaage made the final payment on the contract for deed. She testified her recollection was the language of the deed was identical to the language of the contract for deed. She testified she believed the deed was altered after she saw it, but did not know who made the alleged alteration or why it was made.

[¶ 10] The Estate's post-trial brief argued for the first time that the March 1984 personal representative's deed may have been altered due to a mistake. The Estate argued regardless of whether fraud or mistake occurred, the language of the personal representative's deed did not match the language of the contract for deed and must be reformed.

[¶ 11] The district court issued a memorandum decision concluding it lacked subject matter jurisdiction to hear the Estate's fraud claim. The court stated the Lowell Vaage estate should have brought an action against the John Vaage estate because the personal representative's deed was issued during the administration of John Vaage's estate. The court also concluded the Lowell Vaage estate's fraud claim was barred by the five-year statute of limitations under N.D.C.C. § 30.1–01–03.

[¶ 12] The court also addressed the Estate's claim for reformation, finding the Estate did not present clear and convincing evidence of fraud or mistake and declining to reform the March 1984 personal representative's deed. The court dismissed the Estate's action and a judgment was entered quieting title to the 91.6666

disputed mineral acres in favor of the Vaage defendants.

## II

[¶ 13] The Estate argues the district court erred in concluding it lacked subject matter jurisdiction over the quiet title and reformation claim against the Vaage defendants.

[¶ 14] When jurisdictional facts are not disputed, the issue of subject matter jurisdiction is a question of law, which we review de novo. *In re Estate of Bartelson*, 2011 ND 219, ¶ 8, 806 N.W.2d 199. Here, the jurisdictional facts are not in dispute and we review the issue de novo.

[¶ 15] Under N.D.C.C. § 30.1–12–05, a district court has jurisdiction to determine ownership of property alleged to belong to an estate. *Bartelson*, 2011 ND 219, ¶ 9, 806 N.W.2d 199. The Estate brought this action against the heirs of Kenneth Vaage and Donald Vaage, who claim an interest in the property the Estate alleges it owns. The district court concluded it lacked subject matter jurisdiction "to try the case of an alleged fraud committed by the personal representative in the Estate of John Vaage in the unrelated case of the Estate of Lowell Vaage." The Estate's action against the Vaage defendants was to reform a deed and quiet title to property. The fraud claim was made within the context of reforming a deed under N.D.C.C. § 32–04–17. The primary purpose of the Estate's action was to reform a deed and determine ownership of property the Estate alleged it owns. We conclude the district court erred in determining it lacked subject matter jurisdiction over the Estate's action to determine ownership of the property.

## III

[¶ 16] The Estate argues the district court erred in concluding the Estate's fraud claim was barred by the five-year statute of limitations under N.D.C.C. § 30.1–01–03, dealing with fraud in connection with a probate proceeding.

[¶ 17] The Estate, however, brought a quiet title and reformation action against the Vaage defendants, not a fraud action in connection with the administration of John Vaage's estate, and we conclude the statute of limitations under N.D.C.C. § 30.1–01–03 is not applicable to the Estate's quiet title and reformation claim.

[¶ 18] The district court's conclusion on the statute of limitations appears to be based, in part, on its erroneous conclusion it did not have subject matter jurisdiction over the action. A reformation action accrues at the time the facts constituting the fraud or mistake forming the basis for reformation have been or should have been discovered by the party applying for relief. *Johnson v. Hovland*, 2011 ND 64, ¶ 13, 795 N.W.2d 294. The Estate alleges the facts forming the basis for reformation of the March 1984 personal representative's deed were not discovered until February 2011, approximately a year and a half before the Estate brought this action. The Vaage defendants have not argued the facts forming the basis for reformation should have been discovered sooner. Therefore, for purposes of this action, we conclude the Estate's action was timely. *See e.g.*, *Ell v. Ell*, 295 N.W.2d 143, 151–52 (N.D.1980) (Action to reform a deed brought four months after discovery of necessary facts was timely regardless of whether six-year limitation period of N.D.C.C. § 28–01–16 or ten-year limitation period of N.D.C.C. § 28–01–15 applied.).

[¶ 19] Although the district court erred in its conclusions on subject matter jurisdiction and the statute of limitations, remand is not necessary because the court

alternatively addressed the merits of the Estate's reformation and quiet title claim.

## IV

[¶ 20] The Estate appealed from the judgment following trial and the court's earlier orders denying the parties' summary judgment motions. "An order or judgment denying a motion for summary judgment is nonappealable." *Berg v. Dakota Boys Ranch Ass'n*, 2001 ND 122, ¶ 6, 629 N.W.2d 563; *see also Kartes v. Kartes*, 2013 ND 106, ¶ 13, 831 N.W.2d 731 ("[T]his Court has consistently held that if a case goes to trial after a motion for summary judgment is denied, the question of whether the trial court erred in denying summary judgment is moot."). To the extent that the Estate's appeal challenges the denial of its summary judgment motions, those arguments are moot and we do not address them.

[¶ 21] Our review is limited to the district court's findings of fact and conclusions of law related to the issues at trial. At trial, the Estate argued the March 1984 personal representative's deed should be reformed on the basis of fraud to conform with the language of the 1973 contract for deed.

[¶ 22] "Reformation is an equitable remedy used to rewrite a contract to conform to the parties' actual intent." *Northern Oil & Gas, Inc. v. Creighton*, 2013 ND 73, ¶ 14, 830 N.W.2d 556. Reformation of a deed is governed by N.D.C.C. § 32–04–17:

> When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done

without prejudice to rights acquired by third persons in good faith and for value.

[¶ 23] Each case seeking reformation of a deed must be determined on its own facts and circumstances. *Farmers Union Oil Co. of Garrison v. Smetana*, 2009 ND 74, ¶ 14, 764 N.W.2d 665. A party seeking reformation has the burden to prove by clear and convincing evidence that a written agreement does not state the parties' intended agreement. *Spitzer v. Bartelson*, 2009 ND 179, ¶ 24, 773 N.W.2d 798. "When considering whether to reform a written instrument, 'courts should exercise great caution and require a high degree of proof, *especially when death has sealed the lips of the original parties or a party.*'" *Arndt v. Maki*, 2012 ND 55, ¶ 12, 813 N.W.2d 564 (quoting *Spitzer*, at ¶ 24). Evidence justifying reformation "must be clear, satisfactory, specific, and convincing, and a court ... will not grant reformation upon a mere preponderance of evidence, but only upon certainty of error." *Freidig v. Weed*, 2015 ND 215, ¶ 12, 868 N.W.2d 546.

[¶ 24] Whether a contract contains a mistake or fraud sufficient to support a claim for reformation is a question of fact. *Freidig*, 2015 ND 215, ¶ 13, 868 N.W.2d 546. Under N.D.R.Civ.P. 52(a)(6), a district court's findings of fact will not be set aside unless they are clearly erroneous, and due regard must be given to the district court's opportunity to judge the credibility of the witnesses. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if we are left with a definite and firm conviction a mistake has been made. *Bredeson v. Mackey*, 2014 ND 25, ¶ 5, 842 N.W.2d 860.

[¶ 25] The Estate's appellate brief does not attack the district court's findings of fact on fraud. Counsel for the Estate nevertheless stated at oral argument the

court clearly erred in its findings. The Estate's primary argument appears to be that the March 1984 personal representative's deed should be reformed on the basis of the court's earlier conclusion in the court's first order denying summary judgment that the mineral reservation language of the personal representative's deed did not mirror the language of the 1973 contract for deed. In an earlier reformation case, we stated, "The mere discrepancy between the contract for deed and quitclaim deed regarding mineral reservations is insufficient to demonstrate the later document was signed in error." *Spitzer*, 2009 ND 179, ¶ 28, 773 N.W.2d 798. Here, the Estate has the burden to establish the discrepancy between the contract for deed and personal representative's deed was the result of fraud or mistake.

[¶ 26] The district court found the Estate failed to meet its burden of proof in showing the March 1984 personal representative's deed should be reformed on the basis of fraud. The court discussed the evidence the Estate introduced at trial to prove the deed was fraudulently altered—testimony of a document examiner and Correne Vaage's deposition testimony—and explained:

> One piece of evidence came from Dennis Rohr, a so called expert documents examiner. His testimony consisted of examining a copy of the March 5, 1984 deed, and noting that the word "the" was out of alignment. That is, the word "the" was above the imaginary typing baseline. Further, the letter "r" in the word remaining appeared to be outside of the margin of the rest of the words in the paragraph. The word "remaining" also appeared to be somewhat askew.
>
> His explanation for these two words boiled down to either one, the roller and tab settings were physically changed

when the words were typed, or two, that someone inserted the words at a later date. He could not say which. He could not say when the words were put in, or why. Since he did not know any of the parties, he could not rule out a totally innocent explanation for the variances.

> The only other evidence came by way of the deposition testimony of Correne Vaage. The Vaage [defendants] object to this testimony for a number of reasons, but even if the Court accepts the deposition testimony, it offers little in support of the claim of fraud. Correne Vaage is an elderly woman, suffering from cancer. Her testimony reflects back on an event nearly 30 years earlier. The testimony is entirely self serving and beyond contradiction because everyone else involved in the events surrounding the 1984 deed are now dead. The Court is reminded of civil jury instruction NDJI–C–80.01. This instruction advises the finder of fact to test the weight and credibility of witnesses. When considering the weight and credibility of a witness, the finder of fact may consider age, strength or weakness of recollection, possible interest in the outcome of the trial, bias or prejudice, and whether testimony was reasonable or unreasonable, among other factors.

> This Court, as a finder of fact, takes Correne Vaage's testimony with more than a grain of salt. As noted above, she is elderly and in poor health. She is reflecting upon an event now 30 years ago. Her testimony is colored by her obvious financial interest in the minerals. And, the testimony cannot be tested by any other means since all others involved are now dead. The Court gives little credence to Correne Vaage's obviously slanted testimony.

534

In addition, even taking Correne Vaage's testimony in its best light, it does not establish fraud. Correne Vaage's testimony is that the March 5, 1984 deed, as it was filed, is not the same deed she saw ... on the day the contract for deed was finally paid off, and the personal representative deed was presented. Once again, as with witness Dennis Rohr, Correne Vaage does not know when the asserted alteration occurred, who made the alteration, or why it was made.

. . . .

The evidence presented by the Estate is not clear and convincing, it does not constitute a high degree of proof, it does not rise to the level of certainty of error. The evidence requires the Court to accept without question the self serving testimony of an elderly woman, in poor health, remembering events now 30 years old.

[¶ 27] The court also addressed the issue of mistake, which the Estate's post-trial brief also claimed supported reformation:

Throughout this entire proceeding the constant and singular complaint of the Estate has been fraud. Someone, for their own gain, fraudulently altered the March 5, 1984 personal representative's deed. Now, after the case has been fully tried on that theory, the Estate urges upon the Court a mistake as reason for reformation.

This theory would require the Court to completely discount every argument and all evidence presented by the Estate for fraud. After arguing from the outset that someone altered the deed after the fact, after presenting the deposition of Correne Vaage that the deed, as originally prepared mirrored the contract for deed and was only changed later by persons unknown, the Estate reverses course. It now argues that there must have been a mistake. The deed was non-conforming and was prepared by mistake.

Once again, the Court must hold the Estate to a high degree of proof, and certainty of error, especially where death has sealed so many lips. This high burden of proof is not satisfied by simply showing a non-conforming document, and asking the Court not only to assume a mistake, but that the Court also ignore all other evidence and arguments presented so vociferously by the Estate in support of its allegations of fraud. The certainty of error requires more.

[¶ 28] Reformation on the basis of fraud or mistake is a question of fact subject to the clearly erroneous standard of review. *Freidig*, 2015 ND 215, ¶ 13, 868 N.W.2d 546. Here, the parties involved in the execution of the two relevant instruments are deceased. There was evidence Lowell Vaage was delinquent in his payments on the contract for deed; the last payment was made in March 1984, and the contract stated the final payment was due on or before January 15, 1983. The contract for deed provided a warranty deed would be issued upon completion, not a personal representative's deed. Correne Vaage's testimony indicates the personal representative's deed may have been fraudulently altered, but the court found her testimony to be self-serving and not credible. The evidence does not establish whether Lowell Vaage and John Vaage's estate intended to change the personal representative's deed or whether the deed was fraudulently or mistakenly altered.

[¶ 29] On this record, under our deferential standard of review, we conclude the district court's findings that the Estate failed to meet its burden of proving fraud or mistake are not clearly erroneous. The

court found the Estate was unable to show the discrepancy between the relevant documents was the result of fraud or mistake. The lack of evidence in the record on fraud or mistake supports the court's findings, and we are not convinced the court was mistaken in its findings.

## V

[¶ 30] The Estate argues that under the doctrine of equitable conversion, Lowell Vaage had equitable title to all of the minerals under the contract for deed, and John Vaage's estate retained the legal title subject to Lowell Vaage's completion of the contract for deed. The Estate did not raise this argument in the district court and has raised it for the first time on appeal. We will not address arguments raised for the first time on appeal. *Risovi v. Job Service*, 2014 ND 60, ¶ 12, 845 N.W.2d 15.

## VI

[¶ 31] We affirm the judgment.

[¶ 32] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ, concur.